805 So.2d 941 (2001)
CHECKERS DRIVE-IN RESTAURANTS, INC.; Herbert G. Brown; and James F. White, Appellants,
v.
TAMPA CHECKMATE FOOD SERVICES, INC., and Robert H. Gagne, Appellees.
No. 2D00-2089.
District Court of Appeal of Florida, Second District.
November 14, 2001.
*942 Kevin H. Graham and Duane A. Daiker of Shumaker, Loop & Kendrick, LLP, Tampa, for Appellants.
Tracy S. Carlin of Foley & Lardner, Jacksonville; and James F. Landis of Foley & Lardner, Tampa, for Appellees.
ALTENBERND, Acting Chief Judge.
Checkers Drive-In Restaurants, Inc. (Checkers), a franchisor of fast food restaurants, and two of its former officers, Herbert G. Brown and James F. White, appeal judgments entered against them and in favor of Tampa Checkmate, Inc., a Checkers franchisee, and Tampa Checkmate's sole shareholder, Robert Gagne. We affirm in part and reverse in part.
We reverse the judgments entered against Herbert Brown because there was no competent, substantial evidence that he personally participated in any wrongful conduct. We also reverse the judgment entered in favor of Robert Gagne on his claim for violation of the Florida Franchise Act. § 817.416, Fla. Stat. (1993). This is a claim that can only be asserted by Tampa Checkmate or as a derivative claim on behalf of Tampa Checkmate. Finally, we reverse the prejudgment interest on Tampa Checkmate's judgment for fraudulent inducement and remand for a recalculation of the prejudgment interest from the date of the jury's verdict. We affirm without further comment the remaining portions of the judgments, including the finding that *943 Mr. Gagne was fraudulently induced into signing a personal guaranty.
In 1992, Robert Gagne operated Checkers franchises in the Jacksonville area. In 1993, a dispute arose between the parties. To resolve this dispute, the parties entered into a settlement agreement on June 3, 1994, part of which required Checkers to provide Mr. Gagne with the option to purchase a Checkers franchise in Tampa. Mr. Gagne assigned this option to Tampa Checkmate, Inc., of which he is the sole shareholder. Tampa Checkmate exercised the option. To complete the transaction, Tampa Checkmate executed documents on November 2, 1994, including a franchise agreement, a leasehold mortgage, and a promissory note. Mr. Gagne executed documents including an unconditional guaranty, personally guaranteeing the payment of the promissory note.
Tampa Checkmate defaulted on the franchise agreement, the mortgage, and the note. Mr. Gagne defaulted on the personal guaranty. As a result, Checkers brought this action alleging breaches of various contracts by Mr. Gagne and Tampa Checkmate. Mr. Gagne and Tampa Checkmate counterclaimed, alleging that Checkers and some of its officers had fraudulently induced them into signing the Tampa franchise agreement, the note and mortgage, and the personal guaranty. In addition, Mr. Gagne alleged fraudulent inducement as an affirmative defense to Checkers' claim for breach of the personal guaranty. The judgments on appeal are a result of the jury's finding that Checkers and two of its officers engaged in fraud to induce Mr. Gagne and Tampa Checkmate to purchase the Tampa franchise.
At trial, the parties agreed to submit a special verdict form to the jury. Based upon that verdict form, the jury found (1) that Mr. Gagne was not liable to Checkers for the breach of the guaranty because Checkers had fraudulently induced him into executing it; (2) that Checkers, Herbert Brown, and James White fraudulently induced Tampa Checkmate to enter into the Tampa franchise agreement resulting in damages of $151,330 to Tampa Checkmate; (3) that Checkers, Mr. Brown, and Mr. White violated the Florida Franchise Act with respect to the Tampa franchise transaction resulting in damages of $151,330 to Tampa Checkmate; and (4) that Checkers, Mr. Brown, and Mr. White violated the Florida Franchise Act with respect to the Tampa franchise resulting in damages of $151,330 to Mr. Gagne.[1] The trial judge entered a judgment based upon this verdict and added prejudgment interest to each of the judgments.

LIABILITY OF HERBERT BROWN
We reverse the judgments to the extent that they hold Herbert Brown liable for fraudulent inducement and for violation of the Florida Franchise Act. Mr. Brown did not participate in any of the negotiations regarding the Tampa Checkmate franchise. Viewed in the light most favorable to Tampa Checkmate and Mr. Gagne, the evidence simply established that Mr. Brown was an officer and director of Checkers at the time of these negotiations, that in July 1994 he attended a Checkers convention at which the financial stability of the company was touted despite economic indications to the contrary, and that Mr. Brown was quoted in a press release in October 1993 as indicating that Checkers had a line of credit that "should, along with expected cash flows from operations, fund our anticipated growth into 1995."
*944 Mr. Brown cannot be held personally liable for the corporation's actions simply by reason of his official relation to the corporation. See Munder v. Circle One Condo., Inc., 596 So.2d 144, 145 (Fla. 4th DCA 1992). See also Phelps Dodge Refining Corp. v. Fed. Trade Comm'n, 139 F.2d 393 (2d Cir.1943). Instead, Mr. Brown can be individually liable only if he personally participated in the fraud. See, e.g., Segal v. Rhumbline Int'l, Inc., 688 So.2d 397 (Fla. 4th DCA 1997); White-Wilson Med. Ctr. v. Dayta Consultants, Inc., 486 So.2d 659 (Fla. 1st DCA 1986). Thus, it is only Mr. Brown's specific statement in the press release that might subject him to personal liability.[2] There was no evidence, however, that the statement attributed to Mr. Brown in this press release was false or misleading at the time it was made. We therefore reverse the judgments against Mr. Brown individually.[3]

MR. GAGNE'S CLAIM FOR VIOLATION OF THE FLORIDA FRANCHISE ACT
The trial court allowed both Tampa Checkmate and Mr. Gagne to pursue claims against Checkers and its officers based upon the Florida Franchise Act. Mr. Gagne argues that he is a "person" who "invested" in a franchise and thus he may recover individually under the Act. See § 817.416(3). We disagree. In this case, the "person who invested" in the Checkers franchise is Tampa Checkmate, see § 817.416(1)(a), not Mr. Gagne. The violations of the Florida Franchise Act caused a direct injury to Tampa Checkmate. In contrast, any injury to Mr. Gagne was an indirect injury suffered by him as a shareholder who invested in the corporation, Tampa Checkmate. As a result, Mr. Gagne does not have standing as an individual to recover his investment in Tampa Checkmate. See Alario v. Miller, 354 So.2d 925, 926 (Fla. 2d DCA 1978). See also Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chicago, 877 F.2d 1333 (7th Cir.1989); Weissman v. Weener, 12 F.3d 84 (7th Cir.1993).[4] We therefore reverse Mr. Gagne's judgment against Checkers and Mr. White on the Florida Franchise Act claim.[5]

PREJUDGMENT INTEREST
In the final judgment, the trial court awarded Tampa Checkmate prejudgment *945 interest on both of its claims. On the judgment for violation of the Florida Franchise Act, the trial court properly awarded prejudgment interest calculated from the date of the verdict. On the judgment for fraudulent inducement, however, it appears the trial court calculated prejudgment interest from the date the parties executed the franchise agreement.
The only evidence of Tampa Checkmate's damages was presented by an accountant who calculated the damages by comparing what Checkers represented the profits of the Tampa franchise would be to the actual profits anticipated throughout the twenty-year grant of the franchise. The accountant then reduced this amount to present value. This calculation makes clear that Tampa Checkmate's damages for fraudulent inducement were not liquidated until the jury rendered its verdict. Thus, prejudgment interest is appropriate only from the date of the jury's verdict. See Perdue Farms, Inc. v. Hook, 777 So.2d 1047 (Fla. 2d DCA 2001). We therefore reverse the award of prejudgment interest on this claim and remand for a recalculation of prejudgment interest from the date of the verdict.
Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.
FULMER and SALCINES, JJ., Concur.
NOTES
[1] The jury awarded the same amount on three separate claims. It is not readily apparent whether the jury understood that it was awarding the same amount of money three times, for a total award of $453,990. The verdict form agreed to by both parties, however, treated each of these awards as a standalone judgment.
[2] There were no allegations or evidence that Mr. Brown engaged in any conspiracy so as to make him responsible for the misrepresentations of others. See, e.g., Nicholson v. Kellin, 481 So.2d 931 (Fla. 5th DCA 1985).
[3] In contrast, Mr. Gagne and Tampa Checkmate presented sufficient evidence that Mr. White personally participated in the actions alleged so as to hold Mr. White individually liable for fraudulent inducement and violation of the Florida Franchise Act. There was evidence that Mr. Gagne posed specific questions to Mr. White while he was contemplating purchasing the Tampa franchise, and that Mr. White was deceptive and misleading in his answers to Mr. Gagne.
[4] This rule of law is particularly important in this case because Tampa Checkmate has filed for bankruptcy. To allow Mr. Gagne to recover individually for an injury to Tampa Checkmate would allow him to divert a potential asset of the corporation to himself, placing him in a superior position to other potential creditors. Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chicago, 877 F.2d 1333, 1336 (7th Cir.1989).
[5] The jury awarded the same amount of money to Tampa Checkmate and to Mr. Gagne on these claims. At oral argument, the parties agreed that in the event Mr. Gagne was prohibited from an individual recovery, the proper remedy was to reverse the judgment in his favor, and that this reversal did not affect the other judgments obtained by Tampa Checkmate so as to require a new trial. We note that the same amount of money was awarded to Tampa Checkmate for its fraudulent inducement claim. Neither party has argued that the award of the same amount for both of these claims is in any way a double recovery for the same injury.