[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-12700

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 9, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 95-08546 CV-ASG

KMS RESTAURANT CORP.,
a Florida corporation,

Plaintiff-Appellant
Cross-Appellee,

FREDERICK J. KEITEL, III,

Plaintiff,

versus

WENDY'S INTERNATIONAL, INC.,
An Ohio corporation,

Defendant-Appellee
Cross-Appellant,

CITICORP NORTH AMERICA, INC.,
A Delaware corporation,

Defendant.

Appeals from the United States District Court
for the Southern District of Florida

**(August 9, 2006)**

Before DUBINA, KRAVITCH and JOHN R. GIBSON,\* Circuit Judges.

PER CURIAM:

Appellant, KMS Restaurant Corp. ("KMS"), appeals the district court's

final judgment entered in its favor against appellee Wendy's International, Inc.

("Wendy's"). Wendy's cross-appeals the district court's adverse final judgment

and denial of its motion for a new trial. For the reasons that follow, we affirm.

## I. BACKGROUND

This appeal marks the third time this case has been before this court.[1] This

case stems from KMS' attempt to purchase 27 Wendy's restaurants in Florida from

Citicorp, North American, Inc. ("Citicorp"). Because the restaurants are

---

\*Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting by designation.

[1]*See KMS Rest. Corp. v. Wendy's Int'l, Inc.,* No. 98-5336 (11th Cir. Feb. 2, 2000) (unpublished) ("Wendy's I"), and *KMS Rest. Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321 (11th Cir. 2004 ("Wendy's II").

2

franchises of Wendy's, the purchase contract ("Contract") was contingent on Wendy's approval of KMS as a franchisee. Ultimately, Wendy's did not approve KMS, the Contract failed, and litigation followed.

The underlying facts are instructive. Frederick J. Keitel, III ("Keitel"), along with Martin J. Abel ("Abel") and Melvin B. Seiden ("Seiden") incorporated KMS for the purpose of purchasing the 27 restaurants. Citicorp and KMS entered into the Contract, subject to franchise approval by Wendy's. While KMS was in the process of acquiring franchise approval, Steve Wirt ("Wirt"), Wendy's Vice President of Franchise Sales and Development, informed Keitel that if KMS associated with Feldon B. Nutter, Sr. ("Nutter"), a member of Wendy's Board of Directors, the franchise application would definitely be approved. Keitel and Nutter subsequently met, and Abel and Seiden sold their KMS interests to Nutter so that he could become a KMS shareholder. Shortly thereafter, Nutter withdrew from the deal, expressing his inability to remain a member of Wendy's Board of Directors and simultaneously serve as a minority shareholder in KMS. Keitel then met with his former shareholders, Abel and Seiden, and paid them to become KMS shareholders again. KMS renewed its application for franchise approval by Wendy's, but was denied approval due to Wendy's concern about the stability of KMS' corporate structure. Wendy's itself subsequently purchased the restaurants

3

from Citicorp.

In 1995, KMS and Keitel filed suit in a Florida state court against Wendy's and Citicorp. The complaint alleged three counts: (1) Wendy's tortiously interfered with the Contract to buy the 27 restaurants; (2) Wendy's tortiously interfered with the advantageous business relationship that existed between Keitel and his KMS business partners; and (3) Citicorp breached its duty to act in good faith when it refused to sell the restaurants to Keitel and KMS after Wendy's denied franchise approval. The case was removed to federal court based on diversity jurisdiction. During the litigation, Citicorp settled with KMS, the third count of the complaint was dismissed, and Citicorp was dismissed from the lawsuit. Thereafter, the district court granted summary judgment to Wendy's on the second count of the complaint and, after protracted appellate litigation, the first count of the complaint– namely, the tortious interference claim– proceeded to trial.

At trial, the jury returned a verdict in favor of KMS, awarding $5.1 million in damages. The district court entered a judgment in favor of KMS for the amount of $5.1 million, reserving its ruling on KMS' motion for prejudgment interest. Thereafter, Wendy's filed a motion for a set off against the judgment of the proceeds from KMS' settlement with Citicorp. The district court granted that motion and deducted the $185,000.00 Citicorp settlement from the $5.1 million

4

Wendy's judgment. Wendy's then filed a post-trial motion for judgment as a matter of law, or alternatively, a motion for a new trial, which was denied by the district court. KMS moved for attorneys' fees, prejudgment interest and costs. The district court granted in part and denied in part KMS' motion. Specifically, the court denied KMS' request for attorneys' fees, awarded KMS prejudgment interest from the date of the verdict to the date of the final judgment, awarded KMS postjudgment interest from the date following the entry of the final judgment, and denied KMS' request for expert witness fees as costs. Finally, the district court entered a final judgment, amending the previous judgment, and awarded KMS: (1) $4,915,000.00 in damages; (2) prejudgment interest from the date of the verdict to the date of the final judgment in the amount of $117,836.25; and (3) postjudgment interest at the rate of 3.33 percent. This appeal and cross-appeal timely followed.

## II. ISSUES

The appeal and cross-appeal raise the following seven claims of error: (1) the district court abused its discretion in its award of post-verdict, prejudgment interest; (2) the district court abused its discretion in denying KMS' request for attorneys' fees and costs; (3) the district court erred in finding that Wendy's was entitled to a set-off for KMS' settlement with Citicorp; (4) the district court erred

5

by permitting the jury to hear recorded conversations involving Nutter; (5) the district court erred in instructing the jury on the measure of recoverable damages; (6) the district court erred in instructing the jury on causation; and (7) the district court erred in denying Wendy's motion for a new trial.

## III. DISCUSSION

*A.    Award of Prejudgment Interest*

KMS appeals and Wendy's cross-appeals the district court's award of post-verdict, prejudgment interest to KMS. Since these arguments only expose the two sides of the same coin, we address them together.

KMS sought prejudgment interest on the verdict commencing from October 1, 1992, the date its cause of action accrued. Relying on Florida law,[2] the district court found that KMS could not receive a prejudgment interest award on its tort claim unless there was an ascertainable out-of-pocket loss occurring at a specific time prior to the entry of judgment. Considering the circumstances of the case, the district court held that the precise amount of KMS' lost profits was speculative until the verdict was rendered. The district court reasoned that the lost profits were conjectural because: (1) KMS sought lost profits based on Wendy's

---

[2]State law determines whether a successful litigant is entitled to prejudgment interest. *Venn v. St. Paul Fire & Marine Ins. Co.*, 99 F.3d 1058, 1066 (11th Cir. 1996). In this diversity case, the parties agree that Florida's substantive law governs.

tortious interference with KMS' business relationship with Citicorp; (2) the jury

awarded the potential profits that KMS would have earned had it obtained

Wendy's franchise rights to operate the restaurants; and (3) KMS did not receive

the franchise rights and never operated any restaurants.[3]  Relying on *Checkers*

*Drive-In Rests., Inc. v. Tampa Checkmate Food Servs., Inc.*, 805 So. 2d 941 (Fla.

Dist. Ct. App. 2001), the district court concluded that since KMS' damages were

not ascertainable at any specific time before the verdict, KMS was not entitled to

an award of prejudgment interest from the date that its cause of action accrued.

The district court found, however, that because KMS' claim became "liquid and

susceptible of prejudgment interest" when the verdict was rendered, KMS was

entitled to prejudgment interest from December 29, 2004, the date of the verdict,

through the date of the final judgment.

On appeal, KMS argues that to be made whole, prejudgment interest should

be awarded from the date of the loss, October 1, 1992, not the date of the verdict.

KMS contends that it had a vested property right or potential investment in the

Contract and the 27 restaurants, as of October 1, 1992, thus it was entitled to an

award of prejudgment interest from that date.  KMS further contends that the

---

[3]KMS only presented evidence in support of its claim for lost profits, which indicated that it intended to operate the restaurants into the future, and sought only damages based upon projected future profits it claimed it would have earned on future sales.

prejudgment interest should be awarded from October 1, 1992, because both parties' experts estimated damages using that date. Finally, KMS argues that its damages were not speculative, but were ascertainable at a specific time before judgment.

On cross-appeal, Wendy's argues that the district court's grant of post-verdict, prejudgment interest was in error. Citing *Amerace Corp. v. Stallings,* 823 So. 2d 110 (Fla. 2002), Wendy's argues where damages are too speculative to be measured before they are liquidated through the trial process, it is the date of final judgment, not the date of the jury verdict, that triggers the right to interest. Wendy's therefore contends that no prejudgment interest should have been awarded.

"We review the district court's decision[s] on prejudgment interest for abuse of discretion." *Mut. Serv. Ins. Co. v. Frit Indus., Inc.,* 358 F.3d 1312, 1325 (11th Cir. 2004). In addition, we review *de novo* a district court's interpretation of state law. *McMahan v. Toto*, 311 F.3d 1077, 1081 (11th Cir. 2002).

Under Florida law, a prevailing party is entitled to prejudgment interest. *See Argonaut Ins. Co. v. May Plumbing Co.*, 474 So. 2d 212, 214-15 (Fla. 1985). However, Florida courts generally do not allow prejudgment interest on tort claims because damages are often too speculative to liquidate before final judgment.

8

*Lumbermens Mut. Cas. Co. v. Percefull,* 653 So. 2d 389, 390 (Fla. 1995).

We conclude that the district court properly awarded post-verdict, prejudgment interest to KMS. Under Florida law, prejudgment interest is appropriate only from the date of the jury's verdict when damages are not liquidated until the jury renders its verdict. *See Checkers Drive-In*, 805 So. 2d at 945. In *Checkers Drive-In*, the court reversed the prejudgment interest award on a Checkers franchisee's judgment for fraudulent inducement against the franchisor, which was calculated from the date the parties executed the franchise agreement, and remanded the case for recalculation of the prejudgment interest from the date of the jury's verdict. *Id*. at 943. In so doing, the court reasoned that because the damages evidence was based on future anticipated profits (reduced to present value), the damages were unliquidated until the jury rendered its verdict, thus prejudgment interest was appropriate only from the date of the jury's verdict. *Id*. at 945. We are persuaded by the reasoning in *Checkers Drive-In* and conclude that it squarely applies to this case. Therefore, we find no error in the district court's decision to award KMS prejudgment interest from the date of the jury's verdict.

Moreover, we reject Wendy's challenge to the district court's award of prejudgment interest. Contrary to Wendy's assertions, we simply do not find

*Amerace* to be helpful in deciding this issue. In *Amerace,* the Florida Supreme

Court addressed the limited issue of whether a plaintiff in a personal injury case

may recover interest from the date of the verdict through the date of the judgment.

823 So. 2d at 111. Noting that *Amerace* was "technically a 'prejudgment' interest

case, [but] more appropriately labeled a 'postverdict' interest case," the Florida

Supreme Court found that the trial court properly denied the plaintiffs' request for

post-verdict, prejudgment interest because they were, in essence, seeking

postjudgment interest.[4] *Id*. at 113. We find that *Amerace* is distinguishable from

this case and does not support a reversal of the district court's prejudgment interest

award. Accordingly, we hold that the district court did not abuse its discretion in

awarding post-verdict, prejudgment interest.

B.     *Denial of Attorneys' Fees and Costs*

KMS argues that the district court erred in denying its request for an award

of attorneys' fees and expert witness fees as costs, under Florida's offer of

judgment statute, Fla. Stat. § 768.79 (2006), and the rule that applies to settlement

offers made pursuant to that statute, Florida Rule of Civil Procedure 1.442. Under

---

[4]The *Amerace* plaintiffs were not claiming that they were entitled to interest from the date of the loss or injury, as in the instant case; rather, the *Amerace* plaintiffs sought interest for the period between the time when the verdict was rendered and the time when judgment was entered. *Id*. at 113. As a result, the Florida Supreme Court noted that, "[a]s the trial court pointed out, the proper procedure in this case would have been to request that the court enter a judgment promptly after the verdict." *Id*. at 114.

the statute:

> [i]n any civil action for damages filed in the courts of this state, . . . [i]f a plaintiff files a demand for judgment which is not accepted by the defendant within 30 days and the plaintiff recovers a judgment in an amount at least 25 percent greater than the offer, she or he shall be entitled to recover reasonable costs and attorney's fees incurred from the date of the filing of the demand.

Fla. Stat. § 768.79(1). Florida Rule of Civil Procedure 1.442 governs settlements and provides that a settlement proposal "may be made by or to any party or parties . . . [but] [a] joint proposal shall state the amount and terms attributable to each party." Fla. R. Civ. P. 1.442(c)(3). Rule 1.442 also provides that: "[a] proposal shall be served on the party or parties to whom it is made but shall not be filed unless necessary to enforce the provisions of this rule." Fla. R. Civ. P. 1.442(d).

On March 31, 1998, KMS and Keitel made an undifferentiated, joint proposal for settlement to Wendy's for $3,499,000.00. Wendy's rejected the proposal. At trial, KMS was awarded $5.1 million. Since the $5.1 million verdict exceeded KMS' settlement proposal by more than 25 percent, KMS sought attorneys' fees and costs pursuant to Fla. Stat. § 768.79. The district court denied KMS' request, holding that the settlement proposal was void because it failed to apportion the settlement among KMS and Keitel, as required under Rule 1.442(c)(3), and was filed prematurely, in violation of Rule 1.442(d).

11

On appeal, KMS challenges the district court's finding that the settlement proposal was invalid. KMS argues that apportionment was not required because its claims were for the same damages, not separate and distinct damages, and contends that the premature filing of the settlement proposal was immaterial to its validity.

We review the district court's decisions on attorneys' fees and costs for abuse of discretion. *Frankenmuth Mut. Ins. Co. v. Escambia County, Fla.*, 289 F.3d 723, 733 (11th Cir. 2002) (attorneys' fees); *Mut. Serv.,* 358 F.3d at 1316 (costs). We review *de novo* a district court's interpretation of state law. *McMahan*, 311 F.3d at 1081.

The Florida Supreme Court has explicitly held that the plain language of Rule 1.442(c)(3) mandates that settlement proposals be differentiated between the parties, regardless of the number of plaintiffs and defendants involved or the theory of liability. *Lamb v. Matetzschk*, 906 So. 2d 1037 (Fla. 2005); *Willis Shaw Express, Inc. v. Hilyer Sod, Inc.*, 849 So. 2d 276 (Fla. 2003). In *Willis Shaw*, the Florida Supreme Court held that "[a] strict construction of the plain language of rule 1.442(c)(3) requires that offers of judgment made by multiple offerors must apportion the amounts attributable to each offeror." 849 So. 2d at 278-79. *See D'Angelo v. Fitzmaurice*, 863 So. 2d 311, 318-19 (Fla. 2003) (approving the lower

12

court's denial of attorneys' fees based on holding in *Willis Shaw*). We are not dissuaded from this precedent by KMS' argument.[5] We therefore conclude that KMS' joint proposal for settlement was facially invalid and void because it did not differentiate between the parties.[6] Hence, we hold that the district court did not abuse its discretion in denying KMS' request for attorneys' fees and costs pursuant to Fla. Stat. § 768.79.

## C.    *Award of Set-off*

After the district court entered the initial judgment on the $5.1 million verdict, Wendy's filed a motion requesting the court to set off the $185,000.00 Citicorp settlement against the judgment. The district court granted Wendy's motion, ruling that Wendy's did not waive the right to a set-off for the Citicorp settlement by failing to plead it as an affirmative defense. The district court found that, under Florida law, a set-off is an affirmative defense that must be pleaded in contract actions, not tort actions, or it is waived. Relying on *Felgenhauer v. Bonds*, 891 So. 2d 1043 (Fla. Dist. Ct. App. 2004), the district court concluded

---

[5]KMS relied heavily for its argument on the case of *Hall v.Lexington Ins. Co.*, 895 So. 2d 1161 (Fla. Dist. Ct. App. 2005) (holding that offer of settlement was not required to apportion amounts attributable to each insured). We find KMS' reliance on *Hall* to be misplaced as it was recently abrogated in *Graham v. Peter K. Yeskel 1996 Irrevocable Trust*, 928 So. 2d 371, 374 (Fla. Dist. Ct. App. 2006) ("We do not believe that our application of rule 1.442 to the apportionment issue in *Hall* has survived the supreme court's decision in *Lamb*.")

[6]Because we conclude that the settlement proposal was void due to KMS' failure to differentiate its damages, we pretermit discussion of the proposal's premature filing.

that, under Fla. Stat. §§ 768.041 and 46.015,[7] Wendy's did not waive the right to argue for a set-off of the Citicorp settlement by failing to raise the issue in a pleading prior to trial. The district court also found that, since KMS' claims against Citicorp and Wendy's involved the same elements of damages and sought the same overlapping and coextensive economic damages, Wendy's was entitled to a set-off for the settlement.

On appeal, KMS argues that the district court erred in granting Wendy's set-off motion because, under Florida law, there is no distinction between tort and contract cases in waiving the set-off affirmative defense. KMS also contends that *Felgenhauer* and the Florida set-off statutes are inapplicable to this case because Wendy's and Citicorp were not jointly and severally liable.

---

[7]Sections 768.041 and 46.015 provide for a set-off of settlements and "presupposes the existence of multiple defendants jointly and severally liable for the same damages." *D'Angelo*, 863 So. 2d at 314. Section 768.041 provides, in relevant part:

> Release or covenant not to sue.-
> (1) A release or covenant not to sue as to one tortfeasor for property damage to, personal injury of . . . any person shall not operate to release or discharge the liability of any other tortfeasor who may be liable for the same tort or death.
> (2) At trial, if any defendant shows the court that the plaintiff . . . has delivered a release or covenant not to sue to any person, firm, or corporation in partial satisfaction of the damages sued for, the court shall set off this amount from the amount of any judgment to which the plaintiff would be otherwise entitled at the time of rendering judgment and enter judgment accordingly.
> (3) The fact of such a release or covenant not to sue, or that any defendant has been dismissed by order of the court shall not be made known to the jury.

Fla. Stat. § 768.041. Section 46.015 contains almost identical language. *See* Fla. Stat. § 46.015.

We review *de novo* the district court's determination of the proper legal standard under which to compute damages, and will reverse the district court's factual findings only if they are clearly erroneous. *A.A. Profiles, Inc. v. City of Fort Lauderdale*, 253 F.3d 576, 581 (11th Cir. 2001).

We are not persuaded by KMS' arguments. First, the court in *Felgenhauer* explicitly stated that:

> It is well settled in contract actions that set-off is an affirmative defense that must be pleaded or it is waived. . . . However, in tort actions allowing for a set-off under sections 768.041 and 46.015, set-off is not an affirmative defense to be considered by the jury but is a determination regarding damages to be made by the court after the verdict is rendered.

891 So. 2d at 1045 (internal citations omitted).[8] In light of this principle, we agree with the district court and find that, under Florida law, Wendy's did not waive its right to a set-off because the rule of waiver does not apply to tort actions.

Second, we conclude that KMS' "joint and several liability" argument is disingenuous. Despite KMS' assertion that its claim against Citicorp was a simple breach of contract claim, the allegations set forth in its complaint establish

---

[8]Since the Supreme Court of Florida has not addressed this issue, we must rely on the cases in which the district courts of appeal of Florida determined the issue. *See Flintktote Co. v. Dravo Corp.*, 678 F.2d 942, 945 (11th Cir. 1982) (noting that, absent some "persuasive indication" that the state supreme court would decide the issue differently, federal courts must adhere to state intermediate courts' decisions in diversity cases if the state supreme court has not addressed the issue).

15

otherwise. In the complaint, KMS alleged that Citicorp was in "an apparent conspiracy" with Wendy's and breached its duty to act in good faith. (R. Vol. 1, Tab 1, Compl. ¶ 47). Such tort conspiracies theories are mere "vehicle[s] for imputing the tortuous actions of one co-conspirator to another to establish joint liability." *See Hoch v. Rissman, Weisberg, Barrett*, 742 So. 2d 451, 460 (Fla. Dist. Ct. App. 1999). Hence, according to the complaint, Citicorp was merely another alleged tortfeasor whom KMS sought to hold liable for the same injury – namely, the loss of the restaurants. (R. Vol. 30, Tr. 17) ("[Citicorp's] breach was failure to sell [the restaurants] to us."). Contrary to KMS' assertions, it sought the same damages from Wendy's and Citicorp for the same injury. Accordingly, we hold that the district court did not err in granting Wendy's motion for a set-off against the judgment.

D.      *Admission of Nutter's Tape-Recorded Conversations*

The gravamen of this cross-appeal and the issue most troubling to us is Wendy's assertion of error regarding the admission of tape-recorded conversations within Nutter's deposition testimony. Wendy's argues that the district court erred by admitting into evidence certain portions of Nutter's videotaped deposition because the portions contained partial recordings of telephone conversations between Nutter and Keitel. Wendy's contends that the district court erred in

16

holding that Nutter authenticated the recordings by identifying his voice because such identification is insufficient to authenticate recordings. Wendy's further contends that these recordings were inadmissible hearsay, not subject to any exception, and resulted in insurmountable prejudice to Wendy's.

The facts pertaining to these recordings are as follows. After Citicorp refused to close on the deal to sell the 27 restaurants to KMS, Keitel, a licensed Florida attorney, placed several telephone calls to Nutter and recorded the telephone conversations. At Nutter's deposition, some of these recordings were played for Nutter and he was questioned about them. Since Nutter was not available to testify at trial, under Federal Rule of Civil Procedure 32(a)(3)(B), his videotaped deposition was introduced as evidence.[9]

During his deposition, Nutter was questioned about these recorded conversations. Nutter testified that he remembered two telephone conversations with Keitel but could not recall the substance of the calls. Nutter also testified that the recordings sounded like his voice but he only vaguely recalled portions of two conversations. After holding a Federal Rule of Evidence 104 hearing, the district court denied the admission of the recordings and transcripts in their entirety as

---

[9]Because Nutter resides in West Virginia, he was more than 100 miles from the place of trial. *See* Fed. R. Civ. P. 32(a)(3) ("[t]he deposition of a witness . . . may be used by any party for any purpose if the court finds . . . that the witness is at a greater distance than 100 miles from the place of trial . . .").

substantive evidence because KMS failed to establish that the tapes were sufficiently authentic to be played before the jury.[10] The district court also ruled that, even if the tapes were properly authenticated in their entirety, it would deny their admission under Federal Rule of Evidence 403 because their probative value was outweighed by the danger of unfair prejudice.

Notwithstanding these rulings, the district court allowed the jury to hear portions of the recordings as they were referenced in Nutter's deposition. Finding that Nutter's identification of his own voice was sufficient authentication under Federal Rule of Evidence 901(a), the district court stated:

> I will allow into evidence those potions [sic] of Mr. Nutter's deposition where the tapes were played for him and he was questioned, under oath, as to whether it was his voice on the tapes, where the tapes reflected his statements and where he was subject to cross-examination on these topics.

(R. Vol. 11, Tab 512.) The district court further stated that "[t]he issue is essentially one of foundation" and concluded that it found "a sufficient evidentiary basis for the jury to hear certain [sic] of the tapes during the Nutter deposition in order to consider [KMS'] claim that Wendy's used improper means to interfere with its deal with Citicorp." (*Id*.) The district court further concluded that Nutter's recorded statements were admissible under Federal Rule of Evidence

---

[10]The district court applied the analysis set forth in *United States v. Biggins*, 551 F.2d 64, 66 (5th Cir. 1977).

801(d)(2)(A) as statements offered against Wendy's by one of its agents and, exercising its discretion under Federal Rule of Evidence 611(a), held that the admission of certain tapes through the deposition was not unduly prejudicial against Wendy's.

We review the district court's authentication rulings for abuse of discretion. *United States v. Siddiqui*, 235 F.3d 1318, 1322 (11th Cir. 2000). We also review evidentiary rulings for abuse of discretion and will reverse the district court's decision only in cases where substantial prejudice exists. *See Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1259 (11th Cir. 2004). Indeed, "[t]he district court has a range of options; and so long as the district court does not commit a clear error in judgment, we will affirm the district court's decision." *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 863 (11th Cir. 2004).

Considering Wendy's challenge to the district court's evidentiary ruling, we see no abuse of discretion. The district court has "broad discretion in determining whether to allow a recording to be played before the jury." *United States v. Cole*, 755 F.2d 748, 766 (11th Cir. 1985). A speaker's voice may be identified by opinion testimony "based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." Fed. R. Evid. 901(b)(5). "Once a witness establishes familiarity with an identified voice, it is up to the jury to determine the

19

weight to place on the witness's voice identification." *Brown v. City of Hialeah*, 30 F.3d 1433, 1437 (11th Cir. 1994). Here, the limited portions of the recordings were admissible because there was sufficient evidence to support a finding that the recordings were what KMS purported them to be. *See* Fed. R. Evid. 901(a). Because Nutter identified his own voice on the recordings, verified that he had telephone conversations with Keitel, and verified the questions asked and his responses thereto, we conclude that there was competent evidence supporting the district court's determination of authenticity as to the portions of the recordings at issue. (R. Folder 5, Ex. 441, Attach. A at 16, 28, 43-44, 50, 62, 78, 85, 89, 95.)

Additionally, since Nutter's deposition was a videotaped deposition, the jury was able to determine for itself Nutter's credibility and assess his comments, explanations or responses to these recordings. Moreover, we conclude that the recorded statements were admissible under Federal Rule of Evidence 807.[11] A

---

[11]Federal Rule of Evidence 807 provides:

A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and

20

district court has considerable discretion in determining admissibility under Rule 807. *United States v. Rodriguez*, 218 F.3d 1243, 1246 (11th Cir. 2000). Under these circumstances, we see no abuse of discretion. Accordingly, we conclude that the district court did not abuse its discretion in admitting the recordings as a portion of Nutter's deposition.[12]

## E.    *Damages Jury Instructions*

Wendy's argues that the district court erred in instructing the jury on the measure of recoverable damages because it failed to provide instructions on damages recoverable for total destruction of a business opportunity. Wendy's contends that the instructions given by the district court improperly included language relating to both lost profits and market value and was an improper statement of Florida law. Wendy's further argues that, contrary to Florida law, the district court allowed KMS to measure its damages in the form of lost profits on prospective relationships with unidentifiable restaurant patrons. Finally, Wendy's

---

address of the declarant.

Fed. R. Evid. 807.

[12]We would be remiss if we did not acknowledge the troubling aspect of this issue. Keitel's actions of calling his legal opponent for the purpose of recording the conversations as evidence in this action cannot be condoned. Keitel's misleading questions and misrepresentations to Nutter are beyond belief and raise serious ethical considerations. We frown upon such deceiving conduct by an attorney and party. Yet, despite our disapproval of Keitel's actions, we cannot say that the district court's limited admission of these statements resulted in a clear error in judgment. *See Young*, 358 F.3d at 863.

argues that the district court erred in holding that Wendy's waived any argument as to the proper measure of damages and advising the jury to ignore income taxes when determining the damages award.

We review a district court's refusal to give a particular jury instruction for abuse of discretion. *United States v. Yeager,* 331 F.3d 1216, 1222 (11th Cir. 2003).[13] Motions for new trial on the basis of erroneous and prejudicial jury instructions are committed to the discretion of the trial court and reviewed to ascertain whether there has been a clear abuse of discretion. *Christopher v. Cutter Labs.*, 53 F.3d 1184, 1190 (11th Cir. 1995). The court examines the jury instructions as a whole to determine whether they fairly and adequately addressed the issue and correctly stated the law. *Id*. Jury instructions must be put in context; we consider the allegations of the complaint, the evidence presented, and the arguments of counsel when determining whether the jury understood the issues or was misled. *Id*. at 1190-91.

At trial, Wendy's requested a jury instruction stating: "[W]here the plaintiff's property or business is totally destroyed by the defendant's tortious

---

[13]Wendy's seems to challenge the district court's denial of its requested jury instruction as well as the district court's rejection of its arguments in the order ruling on its motion for judgment as a matter of law, or alternatively, motion for a new trial. Because Wendy's has couched its arguments in the terms of "error in instructing the jury," we consider its arguments in that context.

22

interference, the proper measure of damages is the market value of the property or business on the date of the loss." We are persuaded that the district court did not err in refusing to give this requested instruction because this statement of law is inapplicable to this case. It is well-established in Florida law that:

> [i]f a business is completely destroyed, the proper total measure of damages is the market value of the business on the date of the loss. If the business is not completely destroyed, then it may recover lost profits. A business may not recover both lost profits and the market value of the business.

*Montage Group, Ltd. v. Athle-Tech Computer Sys., Inc.*, 889 So. 2d 180, 193 (Fla. Dist. Ct. App. 2004) (citations omitted). In this case, the "business" was not completely destroyed. Wendy's tortious interference with KMS' business relationship with Citicorp did not result in complete destruction of the 27 restaurants; rather, it resulted in KMS' loss of the use of these restaurants as a Wendy's franchisee.[14] As such, lost profits was the correct measure of damages. *See Aetna Life & Cas. Co. v. Little*, 384 So. 2d 213, 216 (Fla. Dist. Ct. App. 1980) ("Lost profits and *loss of use* may be a proper item of damages if the property or business is not completely destroyed.") (emphasis added). We therefore find no abuse of discretion in the district court's denial of Wendy's requested instruction.

Moreover, we find no clear abuse of discretion in the district court's

---

[14]These 27 restaurants were operated successfully under a different owner.

23

damages instructions to the jury because it adequately summarized the factual controversies under the applicable law. The only portion of Wendy's argument that merits discussion is the allegation that the actual charges given by the district court improperly included language relating to both lost profits and market value.

The district court's jury instruction provided:

> Where there is a tortious interference with a contract, one who becomes liable for it is liable for damages for the pecuniary loss of the benefits of the contract. *In arriving at the amount of the award, you may consider any damage suffered by KMS based upon a net present value methodology of market value using anticipated lost profits associated with the 27 fast-food locations under the direction of KMS "but for" the alleged interference by the Defendant.* The determination of the current value of a future stream of profits is fundamental to such an analysis. . . .

> On the other hand, KMS is not to be awarded purely speculative damages. Allowance of lost profits may be included in the damages awarded only - - it should be, where the loss of profits is proven to a reasonable degree of certainty [and] . . . the evidence must establish lost profits such that a prudent and impartial person would be satisfied that the damages are not the result of speculation or conjecture. An award of lost profits requires the establishment of some standard, such as regular market values or other established data by which reference to the amount of lost profits may be satisfactorily ascertained.

(R. Vol. 29 at 32-33) (emphasis added). In order for a business to recover lost prospective profits, it must prove not only that the defendant's action caused the damage but also that there is some standard by which the amount of damages may be adequately determined. *W.W. Gay Mech. Contractor, Inc. v. Wharfside Two,*

24

*Ltd.,* 545 So. 2d 1348, 1351 (Fla. 1989). Here, the district court merely instructed the jury that present market value may be used as a standard in determining the amount of damages. Accordingly, we find no error in the district court's instructions to the jury on measurable damages.

## F.     Causation Jury Instructions

Wendy's argues that the district court erred in instructing the jury on causation. Wendy's contends that a new trial is warranted because the district court failed to instruct the jury that Wendy's liability must be predicated on finding that "but for" Wendy's improper acts, KMS would have been qualified as a Wendy's franchisee.

> In regard to causation, the district court instructed the jury as follows:
>
> If you should find for KMS on liability, you should award Plaintiff an amount of money shown by a preponderance of the evidence in the case to be fair and adequate compensation for such loss or damage, if any, as proximately resulted from the tortious interference. For damage to be the proximate result of such interference, it must be shown that, except for the tortious interference, such damage would not have occurred. Otherwise stated, damage is proximately caused by interference only when the interference directly and in natural and continuous sequence produces, or contributes substantially to producing such injury. The alleged violation must be [a] direct, substantial and identifiable cause of the injury that the Plaintiff claims so that, *but for the interference, the injury would not have occurred*.

(R. Vol. 29 at 31-32) (emphasis added). We see no error in the district court's

25

causation instructions.[15]  The district court's instructions explicitly included the "but for" test of proximate causation and were proper.  Additionally, under Florida law, the elements of tortious interference with a business relationship are: (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship.  *See Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985).  Wendy's assertion that KMS had to prove that Wendy's interfered with KMS' franchisee qualification in order to win its claim is stringently narrow and is not in accordance with Florida law.  Upon examining the totality of the instructions and after carefully reviewing the record, we hold that the district court did not abuse its discretion in instructing the jury on causation.

## G.    *Denial of Motion for New Trial*

Wendy's argues the district court erred in denying its motion for a new trial after allowing improper damages evidence.  Wendy's contends that, in calculating

---

[15]We must remain mindful that "a district court has broad discretion in formulating a jury charge . . . ."  *United States v. Turner*, 871 F.2d 1574, 1578 (11th Cir.), *cert. denied*, 493 U.S. 997 (1989).  "In reviewing the adequacy of a jury instruction the appellate court must examine the entire charge and determine whether, taken as a whole, the issues and law presented to the jury were adequate."  *United States v. Bizzard*, 674 F.2d 1382, 1389 (11th Cir.) *cert. denied*, 459 U.S. 973 (1982) (quotation omitted).

lost profits, KMS failed to account for management compensation paid in the form of dividends, as opposed to salary, in violation of Florida law.

We review the district court's denial of a motion for a new trial for abuse of discretion. *Bianchi v. Roadway Express, Inc.*, 441 F.3d 1278, 1282 (11th Cir. 2006).

We conclude that Wendy's arguments concerning lost profits are wholly without merit. Wendy's is correct in its assertion that, under Florida law, the failure to deduct compensation or salaries from the computation of lost profits damages constitutes error as a matter of law. *See e.g., Sostchin v. Doll Enters., Inc.*, 847 So. 2d 1123, 1126 (Fla. Dist. Ct. App. 2003). Here, however, there was no failure to deduct such amounts because KMS considered management costs and administrative salaries in its computation of damages. (R. Vol. 13, Tab 587 at 28-29.) Accordingly, we find no reversible error in the district court's denial of Wendy's motion for a new trial based on the damages evidence on management compensation.

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's final judgment and the district court's order denying Wendy's motion for a new trial.

**AFFIRMED.**

27