[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-10762
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 15, 2010
JOHN LEY
CLERK

D. C. Docket No. 07-00871-CV-T-33-TBM

RANDY HETRICK, individually,
CINDY HETRICK, individually,

Plaintiffs-Appellants,

versus

IDEAL IMAGE DEVELOPMENT CORPORATION,
a Florida corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 15, 2010)

Before EDMONDSON and MARCUS, Circuit Judges, and BARBOUR,[*] District
Judge.

_____

[*] Honorable William Henry Barbour, Jr., United States District Judge for the Southern
District of Mississippi, sitting by designation.

PER CURIAM:

Cindy and Randy Hetrick ("the Hetricks") appeal the district court's dismissal of their claims against Ideal Image Development Corp. ("Ideal Image"), a franchisor of cosmetics retail outlets, for violations of the Florida Franchise Act ("FFA") and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). The Hetricks claimed that Ideal Image misrepresented the cost of opening an Ideal Image franchise and the extent of its likely profitability. The district court dismissed the Hetricks' statutory claims on the ground that, under the shareholder standing doctrine, the claims belonged primarily to the Hetricks' closely held corporation, CIRA Corp. ("CIRA"), which they created for the purpose of owning and operating the franchise. The district court did, however, allow the Hetricks individually to proceed to trial on a theory that the same alleged representations amounted to common law fraud and negligent misrepresentation. After a two-day trial, a jury found that no misrepresentations of material fact occurred. The Hetricks do not challenge that verdict, only the earlier dismissal of their statutory claims.

After thorough review, we agree with the district court that under Florida law the Hetricks lack standing to bring an FFA claim in their individual capacities, but we can find no basis in the defendant's arguments or the district court's reasoning for dismissal of the Hetricks' FDUTPA claim. Accordingly, we affirm

2

in part, reverse in part, and remand for further proceedings.

I.

The facts, taken from the complaint, are these: Ideal Image is a franchisor of retail centers that perform cosmetic treatments. In 2004, Randy and Cindy Hetrick became interested in opening an Ideal Image franchise in the Atlanta, Georgia, metropolitan area. Between February 13 and March 30, 2004, the Hetricks spoke by telephone or met in person with Ideal Image representatives on at least four occasions. The Hetricks claim that Ideal Image made a number of representations about the profits and earnings potential of other Ideal Image franchises, and of the franchise that the Hetricks were urged to open, all in violation of the FFA's detailed scheme regulating franchises and the FDUTPA's prohibition on "deceptive or unfair" trade practices.

On March 30, 2004, following the last of their meetings, the Hetricks signed a Franchise Agreement with Ideal Image. Apparently at the urging of Ideal Image, they created a corporation named CIRA Corp. to hold and operate the franchise. Randy Hetrick signed the Franchise Agreement in his capacity as President of CIRA, and Cindy Hetrick signed the agreement in her capacity as Secretary of the company. The Franchise Agreement itself provided that the act of signing it constituted a representation that the investor, if a corporation, was duly

incorporated under the laws of the state of incorporation. Further, in Addendum H to the Franchise Agreement, the "Principal Owners Statement," the Hetricks attested that the purchaser of the franchise was an S Corporation named CIRA Corp. that had been "incorporated or formed on March 30, 2004" in Alabama, and of which Randy Hetrick was the President and Cindy B. Hetrick the Secretary. The Hetricks also signed a personal guarantee that referred to the agreement between CIRA and Ideal Image. In reality, however, CIRA was not formally incorporated until April 2, 2004, a fact about which there is no dispute.

In July 2005, the Hetricks, as the sole directors or officers of CIRA, caused the company's assets and liabilities to be sold to an unrelated third party called II Holdings, Inc. ("Holdings"), in exchange for equity in Holdings. The total value of the sale substantially exceeded the Hetricks' initial investment in CIRA, but Holdings' business later failed and the Hetricks apparently lost all or part of their investment in CIRA.

The Hetricks filed this action in their individual capacities against Ideal Image on April 26, 2007, in the Circuit Court for the Thirteenth Judicial Circuit in Hillsborough County, Florida, from which it was ultimately removed to the United States District Court for the Middle District of Florida. After the district court dismissed two versions of their complaint on the ground that CIRA (and not the

4

Hetricks individually) was the proper plaintiff, the Hetricks filed their Second Amended Complaint, in which they emphasized that CIRA had not "c[ome] into being" until April 2, 2004, well after the alleged misrepresentations were made, and several days after they signed the Franchise Agreement on March 30, 2004.

Ideal Image again moved to dismiss. The district court granted the motion with respect to the FFA and FDUTPA claims on the ground that under Florida law, those claims were barred by the equitable shareholder standing doctrine. However, the district court allowed the common law claims to proceed on the ground that they described a distinct injury based solely on the alleged misrepresentations, which occurred well before CIRA came into existence, and which related to the Hetricks' investment in CIRA, not to CIRA's investment in the franchise.

Ideal Image then moved for summary judgment as to the common law claims on the basis, inter alia, of the shareholder standing rule. The district court denied the motion, concluding that there was "no evidence in the record to support the argument that CIRA was in existence or that the Hetricks behaved as though CIRA existed when Ideal Image made the alleged misrepresentations to the Hetricks." Order Denying Motion for Summary Judgment, Doc. No. 90, dated Dec. 13, 2008, at 31. Subsequently, the Hetricks' claims for fraudulent inducement and negligent misrepresentation were tried to a jury over the course of

two days. The jury returned a verdict for Ideal Image, finding that while Ideal Image made the representations alleged by the Hetricks, those representations did not materially misrepresent any then-existing facts.

The Hetricks timely filed this appeal, in which they challenge only the district court's dismissal of their FFA and FDUTPA claims. They argue that because CIRA did not exist either at the time of the alleged misrepresentations or at the time they signed the Franchise Agreement on behalf of CIRA, the shareholder standing doctrine does not bar their claims. Ideal Image renews the contentions it made in the district court, but also now asserts that both the FFA and FDUTPA claims are barred in their entirety by the doctrine of collateral estoppel, since the allegedly unfair and deceptive representations underlying those claims are the same ones that the jury found not to have been materially false.

## II.

"We review de novo the district court's grant of a motion to dismiss under 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).

### A.

We agree with Ideal Image and the district court that under Florida law the

6

Hetricks lack standing to pursue an FFA claim in their individual capacities.[1]  The FFA clearly establishes who may sue for a violation of its terms: "Any person, who shows in a civil court of law a violation of this section[,] may receive a judgment for all moneys invested in such franchise or distributorship."  Fla. Stat. § 817.416(3).  The statute defines "person" as "an individual, partnership, corporation, association, or other entity doing business in Florida."  Id. § 817.416(1)(a).  As the Second Florida District Court of Appeal held in Checkers Drive-In Restaurants, Inc. v. Tampa Checkmate Food Services, Inc., the relevant question for standing under the statute is which "'person . . . invested' in the . . . franchise."  805 So. 2d 941, 944 (Fla. Dist. Ct. App. 2001) (quoting Fla. Stat. § 817.416(1)(a), (3)).

Florida law, in turn, strictly observes corporate form in ascertaining the "person who invested" in a franchise -- for example, whether that "person" was a closely held corporation, or that corporation's sole shareholder acting individually.  Id.; see also Lincoln Oldsmobile, Inc. v. Branch, 574 So. 2d 1111, 1114 (Fla. Dist. Ct. App. 1990) ("[A] stockholder cannot maintain an action in his own name but

_____

[1] The issue presented by this appeal is one of "shareholder standing."  The shareholder standing rule, embodied in Florida law, "is a longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation."  Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd., 493 U.S. 331, 336 (1990).  It is "related" to, but distinct from, the prudential rule of Article III standing that ordinarily bars a plaintiff's assertion of the rights of third parties.  Id. (citing Warth v. Seldin, 422 U.S. 490, 499 (1975)).

must bring it in the name of the corporation. This is true even where the individual is the sole stockholder of the corporation.").

As in Checkers, where the Florida court held that the sole shareholder of a closely-held corporation had no standing to pursue an FFA claim because his corporation had "invested in" the subject franchise, 805 So. 2d at 944, the question in this case is whether it was an individual or a corporation that "invested in" the franchise. If the Hetricks invested in the Ideal Image franchise individually and on their own behalf, then the right to file any FFA claim inheres in them. If, however, CIRA invested in the franchise, then any FFA rights would inhere in it, meaning that the Hetricks would have no standing under Checkers and, more generally, under the shareholder standing doctrine, to pursue an individual FFA claim.

The Hetricks alleged in their Second Amended Complaint, and they argue on appeal, that CIRA only "came into being on April 2, 2004, . . . after the franchise agreement was signed." Second Amended Complaint ¶ 21. They claim that because CIRA was not formally incorporated under Alabama law until April 2, 2004, it could not, as a matter of law or logic, have acquired any legal rights pursuant to the Florida Franchise Act on March 30, 2004. We are unpersuaded because the record demonstrates, as a matter of law, that the Hetricks were acting as promoters for the embryonic CIRA Corporation when they signed the Franchise

8

Agreement and related documents on March 30, 2004, and that CIRA unambiguously adopted or ratified that agreement by implication, causing any rights under the FFA to accrue to CIRA.

Under Florida law, a "promoter" is a person who presumes to act on behalf of a proposed corporation which is not yet incorporated, and "[i]t is well settled that a corporation may ratify, confirm, or adopt the contracts of its promoters," Nat'l Sur. Co. v. Williams, 77 So. 212, 219 (Fla. 1917) (citing Cook on Corporations § 707 (7th ed.)), "either expressly or by implication," C. & H. Contractors, Inc. v. McKee, 177 So.2d 851, 853 (Fla. Dist. Ct. App. 1965).

It cannot be disputed reasonably that the Hetricks were acting as promoters for the as-yet-unformed CIRA when they signed multiple documents on CIRA's behalf on March 30, 2004, repeatedly warranting that CIRA was purchasing the franchise. Indeed, counsel for the Hetricks conceded as much at oral argument. Nor can there be any reasonable dispute that CIRA, after being incorporated only three days later, ratified or adopted the Franchise Agreement by implication -- including all rights and duties flowing therefrom. The Second Amended Complaint asserts that the Hetricks "formed and funded CIRA" because of misrepresentations allegedly made by Ideal Image in February and March of 2004, Second Amended Complaint ¶¶ 23-27, and that, after CIRA's incorporation, they

9

"funded and expended hundreds of thousands of dollars of their personal funds <u>in an effort to develop and sustain an IDEAL IMAGE franchise through CIRA Corporation</u>." <u>Id.</u> ¶ 26 (emphasis added). They explicitly allege that had it not been for the claimed misrepresentations, they <u>would not have formed and funded CIRA</u>. <u>See</u> <u>id.</u> ¶¶ 23, 27, 48, 56, 63. In other words, the Franchise Agreement was CIRA Corporation's sole <u>raison d'être</u>.

Under the circumstances of this case, we hold that CIRA, the Hetricks' closely held corporation, adopted by implication the pre-incorporation agreement entered into by the Hetricks as its promoters, and that the corporation thereby assumed the primary rights and duties under the agreement, including the right to sue on it. Thus, for legal purposes, it was CIRA that signed the Franchise Agreement and thereby "invested in" the franchise. That of course means that <u>Checkers</u> is controlling, and that Florida's shareholder standing doctrine prevents the Hetricks from pursuing individual claims under the FFA.[2]

B.

Ideal Image argues that the Hetricks' FDUTPA claim is similarly barred by the shareholder standing doctrine, that the Hetricks failed to state a claim by failing

---

[2] Because we conclude that CIRA Corp. legally "invested in" the franchise by adopting the Franchise Agreement entered into on its behalf by its promoters, we need not and do not address any of the several other grounds that Ideal Image offers for affirmance.

10

to allege any "actual damages" as required by the statute, and that the Hetricks are barred under the doctrine of collateral estoppel from relitigating the issues raised by the FDUTPA claim, which Ideal Image says are identical to those presented to and rejected by the jury that heard the Hetricks' common law claims. As with the FFA claim, the district court disposed of the claim on shareholder standing grounds. We agree with the Hetricks, however, that none of the grounds for dismissal provided by the district court or by Ideal Image withstands scrutiny.

First, the shareholder standing doctrine does not bar the Hetricks FDUTPA claim because the Hetricks sustained a pre-incorporation injury that is separately cognizable under the statute. In contrast to the Florida Franchise Act, which limits standing to the "person" who "invested in" the franchise, Fla. Stat. § 817.416(3), the FDUTPA contains no such limitation. Standing is available to any person who was subject to an unfair or deceptive trade practice. See Fla. Stat. § 501.211(2) (providing for recovery by any "person who has suffered a loss as a result of a violation of" the statute); see also id. § 501.204 (proscribing various "[u]nlawful acts and practices"). That language includes individuals like the Hetricks who formed and funded a corporation on the basis of misrepresentations that were made before the corporation ever existed, and who therefore sustained an injury that is distinct from any injury the corporation may have sustained as a result of investing

11

in a franchise. The shareholder standing cases simply do not apply to this situation, where the Hetricks have suffered a distinct, cognizable injury under the statute. See Clary Corp. v. Smith, 949 S.W.2d 452 (Tex. Ct. App. 1997).

In fact, it is doubtful whether CIRA has any rights to sue for a violation of the FDUTPA, since no representations were made to it or to anyone acting on its behalf. Only the Hetricks received the allegedly unfair and deceptive representations concerning the likely profitability of various franchises, and only the Hetricks formed and funded a corporation on the basis of the alleged unfairness and deception. But, even if CIRA did somehow have a claim under the FDUTPA, the fact that it also may have suffered as a result of the alleged deception, and that the measure of its loss might equal the Hetricks' loss of their investment in CIRA, would not make the Hetricks' deception claim "derivative" of any claim of CIRA, which did not exist and was not even contemplated when the claimed deception occurred.

Ideal Image argues in the alternative that the Hetricks fail to state a claim under the FDUTPA because they cannot allege "actual damages," which, under Florida Law, must be direct damages, not indirect and consequential damages. See Smith v. 2001 South Dixie Highway, Inc., 872 So. 2d 992, 994 (Fla. Dist. Ct. App. 2004). More specifically, Ideal Image says that the Hetricks cannot show that their

losses were caused by the alleged misrepresentations since CIRA sold its assets to Holdings in return for equity rather than cash, meaning that any losses to the Hetricks or CIRA were proximately caused by Holdings' eventual collapse, not by the alleged misrepresentations.[3]

This argument fails too because the facts concerning the sale to Holdings were not part of the pleadings, and therefore do not constitute valid grounds for granting a motion to dismiss. Further, to the extent Ideal Image argues that the Hetricks are collaterally estopped from proving "actual damages" because of the transaction with Holdings, the stipulated facts concerning that transaction, even if given preclusive effect, would not preclude a legally sufficient showing of causation or "actual damages"; the stipulated facts do not state why Holdings failed, and therefore do not eliminate the possibility that the Hetricks' ultimate loss was directly caused by the very misrepresentations about the cost and profitability of the franchise of which the Hetricks now complain.

Finally, we reject Ideal Image's broad assertion of collateral estoppel against the Hetricks' FDUTPA claim on the basis of the jury's verdict. In the trial of the Hetricks' common law fraud and negligent misrepresentation claims, the jury was

---

[3] Ideal Image also argues that the Hetricks did not suffer any actual damages because it was really CIRA that suffered such damages. This argument is merely a rephrasing of the argument that any and all FDUTPA rights belong to CIRA.

asked whether, "prior to the sale of [the] franchise, a representative of Ideal Image made statements concerning the revenues that could be expected from operating an Ideal Image center," and whether "such statements misrepresented existing material facts." The jury found that the alleged statements were made, but that material misrepresentations of fact were not. The jury also was asked whether any "statements contained in Ideal Image's Uniform Franchise Offering Circular misrepresented existing material facts concerning the total initial investment that might be needed to open and operate a typical Ideal Image Center." It again answered in the negative.

"Collateral estoppel is a judicial doctrine which in general terms prevents identical parties from relitigating the same issues that have already been decided." Dep't of Health and Rehabilitative Servs. v. B.J.M., 656 So. 2d 906, 910 (Fla. 1995). For the doctrine to apply, the following five conditions must be met:

> (1) an identical issue must have been presented in the prior proceeding; (2) the issue must have been a critical and necessary part of the prior determination; (3) there must have been a full and fair opportunity to litigate that issue; (4) the parties in the two proceedings must be identical; and (5) the issues must have been actually litigated.

Goodman v. Aldrich & Ramsey Enters., Inc., 804 So. 2d 544, 546-47 (Fla. Dist. Ct. App. 2002).

The doctrine of collateral estoppel does not apply in this case because the

14

"issues" tried to the jury are not "identical" to the issues to be precluded. If the legal standard governing the evaluation of facts found by a judge or jury is different from the standard that governs facts whose consideration is to be estopped, the "issues" generally will not be the same. See United Servs. Auto. Ass'n v. Selz, 637 So. 2d 320, 323-24 (Fla. Dist. Ct. App. 1994); see also Cincinnati Ins. Co. v. Beazer Homes Invs., LLC, 594 F.3d 441, 445 (6th Cir. 2010) ("If the issues are merely evidentiary, they need only deal with the same past events to be considered identical. However, if they concern the legal significance of those facts, the legal standards to be applied must also be identical; different legal standards as applied to the same set of facts create different issues." (emphasis and citation omitted)).

Here, although the alleged misrepresentations underlying the fraud claims may have been the same as those underlying the FDUTPA claim, compare Third Amended Complaint (containing allegations tried to the jury), ¶¶ 6, 9-10, 14, 15, 18-19, 44-59, 69-84, and Trial Tr. 27, 28, 42-44, 56, 61, 96, with Second Amended Complaint ¶ 45 (reciting allegedly unfair and deceptive acts supporting FDUTPA claim), the standard governing unfairness or deception encompasses a wider range of conduct than the standard governing fraud. The Florida courts have held that "deception occurs if there is a representation, omission, or practice that is likely to

15

mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." PNR, Inc. v. Beacon Prop. Mgmt., Inc., 842 So. 2d 773, 777 (Fla. 2003) (quotation marks and citation omitted), and that an unfair practice, for its part, is "one that 'offends established public policy' and . . . is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" Id. (quoting Samuels v. King Motor Co. of Fort Lauderdale, 782 So. 2d 489, 499 (Fla. Dist. Ct. App. 2001)). Obviously, the proscription against unfair and deceptive acts and practices sweeps far more broadly than the doctrine of fraud or negligent misrepresentation, which asks only whether a representation was technically accurate in all material respects. The Hetricks never presented their claims of "unfairness" or "deception" to the jury, and the jury's verdict therefore does not prevent them from doing so now.

## III.

We affirm the district court's dismissal of the Hetricks' individual claim brought pursuant to the Florida Franchise Act. However, we reverse the district court's dismissal of the Hetricks' claim under the FDUTPA and remand that claim for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

16