**PUBLISH**

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 97-2518

_____

D. C. Docket No. 95-30574-RV

J. R. RUDY WILLIAMS,

Plaintiff-Appellant,

versus

VITRO SERVICES CORPORATION; TRACOR
FLIGHT SYSTEMS, INC.; TRACOR, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(July 1, 1998)


Before BIRCH, Circuit Judge, HILL and KRAVITCH, Senior Circuit
Judges.

BIRCH, Circuit Judge:

In this employment discrimination action filed pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., J. R. Williams appeals the district court's order granting summary judgment in favor of Vitro Services Corporation ("Vitro"), Tracor Flight Systems ("Flight Systems"), and Tracor, Inc. ("Tracor"). For the reasons that follow, we conclude that the district court erred in granting summary judgment in favor of Vitro with respect to Williams' claim of discriminatory discharge and in favor of Flight Systems with respect to Williams' failure-to-hire claim. We therefore reverse as to both claims raised on appeal.

## I. BACKGROUND

Vitro, Flight Systems, and Tracor are related companies that function as defense contractors for the United States government. Williams began working for Vitro in 1961 as a mission support coordinator. Williams worked in a variety of capacities within Vitro

over the course of the next twenty years.  In 1982, after losing its contract with the United States Air Force, Vitro terminated Williams as part of a reduction in force (RIF).  In 1984, however, Vitro rehired Williams as an administrative manager; at the time Vitro rehired Williams, he was approximately forty-nine years old.

In 1989, Williams became Manager of Administration of the Corporate Office.  In 1994, Vitro bid on a government project for the United States Army that would have required the company to relocate some of its personnel to Arizona.  According to Vitro, had Vitro successfully obtained this contract, Williams, at age sixty, would have received a promotion in both rank and salary.  Vitro did not obtain the contract, however, and in 1995, pursuant to what Vitro denominates a second RIF, Vitro offered Williams a severance package.  Williams did not accept the terms of the severance package and Vitro terminated him in 1995.

At approximately the same time that Vitro terminated Williams, two positions at Flight Systems became available.  According to

Flight Systems, Williams notified Richard Cannon, the vice president and general manager of Flight Systems, that he would be interested in these positions if they were consolidated into one job, a suggestion that Cannon apparently declined to follow. By the time Williams formally applied for the Flight Systems' positions, the decisions regarding who to hire had already been made. Williams contends that Flight Systems refused to consider him for either position after learning that Williams did not intend to retire in the foreseeable future. Williams further submits that Flight Systems continued to search for candidates to fill the two vacant positions for several weeks after Williams submitted his application, thereby giving rise to an inference of intentional discrimination.

Williams filed suit against Vitro, Flight Systems, and Tracor under both the ADEA and the Florida Civil Rights Act of 1992, Fla. Stat. Ann. § 760.10 . The district court determined that Williams had failed to establish a prima facie case of age discrimination based on either direct or circumstantial evidence with respect to his

4

termination; specifically, the court found that Williams had not shown that he was qualified for any available position within Vitro at the time of his termination. The court further noted that, even assuming that Williams had presented a prima facie case with respect to Vitro, he nonetheless had failed to rebut Vitro's proffered legitimate, non-discriminatory justification for his termination. The court also found that although Williams had established a prima facie case of age discrimination as to Flight Systems' failure to hire him, he had failed adequately to call into doubt with probative evidence Flight Systems' stated reasons for its decision.[1] On appeal, Williams no longer contends that he has set forth direct evidence of age discrimination. He does submit, however, that the district court erred in concluding that there is insufficient evidence in the record to support a jury

---

[1]The district court also found that (1) Williams had not properly served Tracor with a summons or complaint and, thus, dismissed that defendant from the case and (2) Vitro and Flight Systems could not be deemed a single employer for purposes of analyzing the liability of each company for the alleged discriminatory conduct of the other. Although Williams briefly discusses what he contends to be a close affiliation between Vitro and Flight Systems, he does not challenge explicitly either of these determinations on appeal.

question regarding his circumstantial allegations of age discrimination against both Vitro and Flight Systems.

## II.  DISCUSSION

We review de novo the district court's order granting summary judgment.  See Arrington v. Cobb County, 139 F.3d 865, 871 (11th Cir. 1998).  Summary judgment is appropriate where there is no genuine issue of material fact.  See Fed. R. Civ. P. 56(c).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (citation and internal quotation omitted).  On a motion for summary judgment, we must review the record, and all its inferences, in the light most favorable to the nonmoving party.  United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962).

In an employment discrimination case, "the plaintiff must produce sufficient evidence to support an inference that the defendant employer based its employment decision on an illegal criterion." Alphin v. Sears, Roebuck & Co., 940 F.2d 1497, 1500 (11th Cir. 1991) (quoting Halsell v. Kimberly-Clark Corp., 683 F.2d 285, 290 (8th Cir. 1982)). At the summary judgment stage, our inquiry is "whether an ordinary person could reasonably infer discrimination if the facts presented remained unrebutted." Id. (quoting Carter v. City of Miami, 870 F.2d 578, 583 (11th Cir. 1989)). Once a plaintiff has established a prima facie case and has put on sufficient evidence to allow a factfinder to disbelieve an employer's proffered explanation for its actions, that alone is enough to preclude entry of judgment as a matter of law. Combs v. Plantation Patterns, 106 F.3d 1519, 1532 (11th Cir. 1997), cert. denied, _ U.S. _, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998).

This circuit has adopted a variation of the test articulated by the Supreme Court for Title VII claims in McDonnell Douglas Corp. v.

<u>Green</u>, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), for cases arising under the ADEA. <u>Mitchell v. Worldwide Underwriters Ins. Co.</u>, 967 F.2d 565, 566 (11th Cir. 1992). In order to make out a prima facie case for an ADEA violation, the plaintiff must show that he (1) was a member of the protected age group, (2) was subject to adverse employment action, (3) was qualified to do the job, and (4) was replaced by a younger individual. <u>See</u> <u>Benson v. Tocco</u>, 113 F.3d 1203, 1207-08 (11th Cir 1997). These criteria are slightly different in both an RIF case and where a position is eliminated in its entirety; in these instances, the plaintiff establishes a <u>prima</u> <u>facie</u> case by demonstrating (1) that he was in a protected age group and was adversely affected by an employment decision[2], (2) that he was qualified for his current position or to assume another position at the time of discharge, and (3) evidence by which a fact finder reasonably could conclude that the employer intended to

---

[2]It is undisputed that the appellant was within the protected age group at the time of termination.

discriminate on the basis of age in reaching that decision. <u>Id.</u> at 1208.

A. <u>Termination by Vitro</u>

Williams submits that the district court erred in finding that he had failed to demonstrate his qualification for a position at the time of the second RIF and, consistent with this determination, dismissing his claim against Vitro for failure to establish the second prong of his <u>prima</u> <u>facie</u> case. Vitro responds that, even assuming for purposes of this discussion that Williams properly established the requisite elements of his <u>prima</u> <u>facie</u> case, he has failed to rebut the legitimate, non-discriminatory reason proffered by Vitro to justify his termination.

We conclude, at the outset, that the district court erred in dismissing Williams' discriminatory discharge claim on the grounds that he failed to show that he was qualified for a position that became available at the time of his termination. As previously

noted, our case law expressly holds that, where a plaintiff contends that his position has been consolidated or reassigned to other employees, as has been alleged in this case, he may establish a prima facie case by demonstrating that he was qualified for his current position *or* to assume another position at the time of discharge, see Benson, 113 F.3d at 1208; these elements are plainly phrased in the disjunctive, and failure to show qualification for both the current job and a second, vacant position is not fatal to the plaintiff's prima facie case.

Vitro, however, urges that we presume a lack of discriminatory motive in this case based on the fact that the same actor was involved in the decision to hire, promote, and terminate Williams. In support of this proposition, Vitro points to the following facts: Richard Manley, now the president of Vitro and the individual primarily responsible for Williams' termination, rehired Williams following his first termination in a Vitro RIF; at the time that Manley brought Williams back to Vitro, Williams was already within the protected age

classification under the ADEA. In 1989, Manley promoted Williams and, several years later, approved a proposed bid on a defense contract that, if successful, effectively would have resulted in Williams' continued employment in a new project.[3] The record therefore indicates that the same individual who acted as the final decisionmaker with respect to Williams' termination also sought to bring Williams back to Vitro after an earlier RIF, approved Williams' promotion five years later, and implicitly approved his continued employment with Vitro shortly before the second RIF transpired. Vitro asks that we derive from this factual circumstance a presumption that intentional discrimination did not motivate Manley's decision to terminate Williams.

This circuit has not squarely addressed the question of whether an inference or presumption of non-discriminatory motive arises when the individual responsible for hiring or promoting an employee

---

[3]The parties dispute the extent to which relocation to Arizona as part of the new contract would have constituted a promotion for Williams; it is undisputed, however, that Manley approved a proposed project that anticipated Williams' continued participation and employment at Vitro.

11

also participated in or made the ultimate decision to fire that employee. Every other circuit to have reached this question has determined that, where the facts indicate that the same individual both hired and fired an employee, an inference may arise that the employers' stated justification for terminating the employee is not pretextual. See, e.g., Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991) ("[I]n cases where the hirer and firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer.").

The circuit courts have applied varying weights to the strength or value of the inference that obtains when the hirer and firer are the same actor. See, e.g., Bradley v. Harcourt, Brace and Co., 104 F.3d 267, 270-71 (9th Cir. 1996) ("[W]here the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises

that there was no discriminatory motive."); Brown v. CSC Logic, Inc., 82 F.3d 651, 658 (5th Cir. 1996) ("This 'same actor' inference has been accepted by several other circuit courts, and we now express our approval."); Evans v. Technologies Application & Service Co., 80 F.3d 954, 959 (4th Cir. 1996) ("[B]ecause Houseman is the same person who hired Evans, there is a powerful inference that the failure to promote her was not motivated by discriminatory animus.") (internal quotation and citation omitted); E.E.O.C. v. Our Lady of Resurrection Med. Ctr., 77 F.3d 145, 152 (7th Cir. 1996) ("If Boettcher wished to discriminate against Braddy because of her race, she could have refused to hire her in the first place, or she could have discharged her because of her deficient qualifications. Boettcher did neither. . . . The same hirer/firer inference has strong presumptive value."). But see Waldron v. SL Industries, Inc., 56 F.3d 491, 496 n.6 (3rd Cir. 1995) ("[W]here . . . the hirer and firer are the same and the discharge occurred soon after the plaintiff was hired, the defendant may of course argue to the factfinder that it

13

should not find discrimination. But this is simply evidence like any other and should not be accorded any presumptive value.").

Although Vitro has pointed to evidence to show that the same individual responsible for hiring Williams after he already was in the protected age group was also responsible for promoting him, for attempting to prolong his stay with Vitro, and, ultimately, for terminating him, we decline to accord to this "same actor" factual circumstance a *presumption* that discrimination necessarily was absent from the decision to terminate Williams. We nonetheless believe that these facts may give rise to a *permissible inference* that no discriminatory animus motivated Vitro's actions. See Buhrmaster v. Overnite Transp. Co., 61 F.3d 461, 464 (6th Cir. 1995) ("An individual who is willing to hire and promote a person of a certain class is unlikely to fire them simply because they are a member of that class. This general principle applies regardless of whether the class is age, race, sex, or some other protected classification."). But within the burden-shifting framework that has

14

long been established in this circuit with regard to employment discrimination cases, it is important to reiterate that this inference is a permissible–not a mandatory--inference that a jury may make in deciding whether intentional discrimination motivated the employer's conduct. We previously have explained that

> a prima facie case plus evidence permitting disbelief of the employer's proffered reasons equals the plaintiff's entitlement to have the factfinder decide the ultimate issue of discrimination. . . . Of course, the law is that the jury is not *required* to make the inference of discrimination . . . upon rejection of the employer's proffered nondiscriminatory reasons. . . . In performing [its] traditional duties, the jury must measure the strength of the permissible inference of discrimination that can be drawn from the plaintiff's prima facie case along with the evidence that discredits the employer's proffered explanations for its decision. Even if the jury concludes that all the employer's proffered explanations are unworthy of belief, it may still remain unpersuaded that discrimination was the real reason for the employer's decision. That decision is entrusted to the jury's discretion, but to exercise that discretion, the jury has to get the case.

Combs, 106 F.3d at 1531, 1537-38 (emphasis in original). Based on our consistent precedent, as articulated in Combs, we conclude that "same actor" evidence of the sort introduced in this instance constitutes evidence that a jury may consider in deciding the ultimate issue of intentional discrimination. Evidence that the same actor both hired and fired the plaintiff, in some circumstances, may help to convince a jury that the defendant's proffered legitimate reasons for its decision are worthy of belief; it is the province of the jury rather than the court, however, to determine whether the inference generated by "same actor" evidence is strong enough to outweigh a plaintiff's evidence of pretext.[4]

---

[4]It is worth restating that, in this circuit, "evidence of pretext, when added to a prima facie case, is sufficient to create a genuine issue of material fact that precludes summary judgment." Combs, 106 F.3d at 1531. It therefore would be inconsistent with our precedent to require a plaintiff in "same actor" cases not only to show pretext but, in addition, to present further evidence to overcome a special inference created by the "same actor" evidence. Such a rule would be contrary to our previous determinations that a plaintiff need not prove discriminatory intent at the summary judgment stage but, rather, must present evidence from which a jury reasonably could infer that the defendant's non-discriminatory justification for its employment decision is pretextual.

16

Here, we conclude that Williams has presented evidence of intentional discrimination sufficient to withstand summary judgment. Viewing the facts in the light most favorable to Williams, he has alleged that, prior to the second RIF at Vitro, Manley informed Williams that "we have to come up with something to get rid of these older people who have been around for so long. We are about to have a RIF and we have go to get some older people to retire so we can save the jobs for the younger people." Williams Aff. at ¶ 4. Williams has further demonstrated that James Gillis, who conducted Williams' termination interview, asked Williams to sign a document releasing Vitro from any future claims of age discrimination. According to Williams, Gillis had never presented this type of form to any other Vitro employee during Williams' tenure with the company; moreover, Gillis testified that, to his knowledge, no other Vitro employee had ever been given a release form of this nature. See Gillis Dep. at 110-11. In addition, while discussing

17

Williams' termination, Gillis told Williams that he "should have seen it coming," and inquired as to "what kind of story" Williams would like to "put out." Williams Dep. at 148. We conclude that these facts, while not conclusive proof of intentional discrimination, are sufficient evidence from which a jury reasonably could infer that Vitro's contention that Williams was terminated solely pursuant to an RIF was a pretext for age discrimination. Again, it is not our role to weigh this evidence or to make credibility determinations with respect to the ultimate question at issue in a discrimination case; rather, our sole determination is that a finder of fact could have concluded, based on these facts, that Williams' termination was motivated by discriminatory animus. See Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 605 (11th Cir. 1994) (where district court found that "there 'was no evidence that the [employer's] general attitudes played a part in the decision [to terminate the plaintiff]' . . . the district court exceeded its proper role as a reviewing body

18

because a finder of fact *could have* concluded that [the employer's] termination of Cooper-Houston was motivated by racial animus.") (emphasis added).  We therefore reverse the district court as to Williams' discriminatory discharge claim against Vitro.

B.  Failure to Hire by Flight Systems

Williams also contends that the district court erred in dismissing his claim against Flight Systems for its failure to hire him after his second termination from Vitro.  The district court found that Williams had established a prima facie case of discriminatory failure to hire but had failed to show that he was better qualified than the individuals who were hired for the relevant positions.  The court thus concluded that Williams had failed to rebut Flight Systems' proffered justification for its decision not to hire Williams.  Flight Systems takes issue with the district court's determination that Williams properly established the

elements of his prima facie case. Flight Systems further urges that Williams was unqualified for the positions that he sought and, in any event, failed to timely apply for either job.

Approximately one day after Williams' termination, James Gillis, the vice-president of Vitro, advised Williams of two possible job openings at Flight Systems. Williams met with a supervisor from Flight Systems, Richard Cannon, and expressed his interest in both positions. Williams specifically mentioned that he thought that the two positions could be combined and that he could perform the consolidated jobs; Cannon apparently was not receptive to this suggestion. According to Williams, Cannon asked Williams if he would be willing to perform one of the jobs "for twelve to eighteen months," Williams Dep. at 168. Williams responded that he might be interested in such an arrangement, but that he would not sign an agreement at that time limiting the duration of his employment to twelve or eighteen months. See id. The record reveals that Williams wrote Cannon two letters

20

expressing his interest in either of the openings at Flight Systems.

The first, dated January 19, 1995, stated, in relevant part:

> I would like to be considered for the open or anticipated to be open positions of Manager of Administration and/or Contract Administrator in Electronic Systems Division, TFSI. I feel my directly related experience and training in security, human resources, general administration and procurement fields give me unique qualifications to fulfill the job requirements of those positions.

Cannon Dep., Exh. 3. The second letter, dated February 21,

1995, stated, in relevant part:

> I want to confirm to you my interest in the job openings you have in the Electronic Systems Division and for that matter, jobs which may be available in any other areas of TFSI. . . . I have confidence that I am one of only a few who have the experience and other qualifications necessary to perform both jobs. Obviously, TSFI would save considerable operating costs by filling both positions with one person. I would, of course, be interested in either position if you don't see fit to combine the positions. (I've attached my resume.)

Williams Aff., Exh. 4. Cannon notified Williams in a letter dated February 27, 1995, that the positions were no longer available. According to Cannon's testimony, Cannon was directed to transfer Doug Wilson, a Flight Systems' employee based in Texas, into one of the positions; Cannon personally made the decision to hire Margaret McLemore, an individual substantially younger than Williams, to fill the other remaining job.

Having reviewed the record, we conclude that the district court erred in granting summary judgment in favor of Flight Systems with respect to Williams' failure-to-hire claim.[5] As noted by the district court, the record supports each element of Williams' prima facie case of age discrimination: Williams has established that he was within the protected age classification at the time he applied for the jobs, that he was qualified for the positions, and

[5]It is worth noting, however, that Flight Systems' potential liability for discriminatory failure to hire in this case does not attach by virtue of its relationship to Vitro. As noted earlier, the district court found that Vitro and Flight Systems, during the relevant time period, constituted separate legal entities, and that finding remains undisturbed on appeal.

that he suffered an adverse job action. Even assuming that Flight Systems' contention that Williams was less qualified for the positions than the chosen applicants properly constitutes a legitimate, non-discriminatory reason for its decision not to hire Williams, the record contains evidence from which a factfinder reasonably could infer that this stated reason was a pretext for age discrimination. Although Flight Systems now argues both that Williams never formally applied for the positions and that, by the time he did express interest in the jobs, the decisions regarding whom to hire already had been made, Cannon's deposition contains several inconsistencies that cast doubt on the credibility of these assertions. Cannon, for instance, expressly stated that Williams was a candidate being considered for one of the two positions, but subsequently suggested that Williams was never interviewed because he hadn't filled out an application. See Cannon Dep. at 21, 25. Yet, as noted above, the record indicates that Williams did apply for the jobs as early as January 19, 1995.

Moreover, the record contains a memorandum routed to Flight Systems' personnel stating the names of each applicant–including Williams–and is dated February 2, 1995. See Cannon Dep., Exh. 7. Notwithstanding the fact that Williams arguably *did* apply for the positions and *was* a candidate, Cannon testified that he never discussed Williams' qualifications for the jobs with anyone other than Manley and Gillis, both of whom provided favorable recommendations, nor did he ever review Williams' personnel file. See Cannon Dep. at 36. These inconsistencies, in combination with Cannon's implication that he might consider giving Williams a job if he would agree to retire soon, constitute sufficient evidence to call into question the veracity of Flight Systems' contentions that Williams did not timely apply for the positions or that the decision of whom to hire had already been made before Williams expressed interest in either job. See Tidwell v. Carter Products, 135 F.3d 1422, 1426 (11th Cir. 1998) ("If a plaintiff provides a prima facie case plus evidence discrediting the

24

employer's proffered reasons, the plaintiff is entitled to have the factfinder decide the ultimate issue of discrimination.") (citation omitted). We therefore conclude that summary judgment was not appropriate with respect to Williams' failure-to-hire claim against Flight Systems.

## III.  CONCLUSION

Williams asks that we set aside the district court's order granting summary judgment in favor of Vitro and Flight Systems in this employment discrimination action.  We conclude that Vitro demonstrated that the same actor at Vitro was primarily responsible for hiring, promoting, and firing Williams; this "same actor" evidence, however, constitutes evidence from which a jury–not the court–is permitted to infer that Vitro terminated Williams for non-discriminatory reasons.  In this case, Williams has presented sufficient evidence of intentional discrimination to survive summary judgment.  We therefore reverse the district

court as to Williams' discriminatory discharge claim. We also conclude that Williams has presented sufficient evidence from which a factfinder reasonably could infer that Flight Systems' failure to hire him was motivated by intentional discriminatory animus. We therefore reverse the district court as to Williams' failure-to-hire claim against Flight Systems.

REVERSED and REMANDED for further proceedings consistent with this opinion.