Cegeste BARTHELUS, Plaintiff,

v.

G4S GOVERNMENT SOLUTIONS, INC., Defendant.

CASE NO. 12–22945–CIV–ALTONAGA/O'Sullivan

United States District Court, S.D. Florida.

Signed September 23, 2015

Filed September 24, 2015

Donald Nathaniel Watson, Gary, Williams, Parenti & Watson, P.L.L.C., Stuart, FL, for Plaintiff.

Robyn Sue Hankins, Robyn S. Hankins, P.L., Jupiter, FL, for Defendant.

1. G4S was formerly known as WSI (Wackenhut Services, Inc.), including at the time Barthelus began working there. (*See* Trial Tr. Day 2 [ECF No. 224] 9:15–21).

2. Prior to the Renewed Motion, Barthelus had filed a Motion for New Trial ... ("Motion") [ECF No. 222], which the Court denied without prejudice due to Barthelus's failure to adequately brief the "prejudice" element of the analysis. (*See* Order [ECF No. 237]). With respect to the Motion, G4S had filed an Opposition ... ("Response") [ECF No. 231],

## ORDER

CECILIA M. ALTONAGA, UNITED STATES DISTRICT JUDGE

**THIS CAUSE** came before the Court on Plaintiff, Cegeste Barthelus's ("Barthelus['s]") Renewed Motion for New Trial ... ("Renewed Motion") [ECF No. 242], filed August 11, 2015. On August 21, 2015, Defendant, G4S Government Solutions, Inc. ("G4S" or "WSI")[1] filed an Opposition ... ("Renewed Response") [ECF No. 244], to which Barthelus filed a Reply ... ("Renewed Reply") [ECF No. 248]. With leave of Court, G4S filed a Sur Reply ... ("Sur-Reply") [ECF No. 251].[2] The Court has carefully reviewed the parties' written submissions, the record, and applicable law.

## I. BACKGROUND

Barthelus seeks a new trial on his claims of race and national origin employment discrimination, on the basis of an erroneous instruction given to the jury at his trial. For the reasons explained below, the Court finds the giving of the instruction constitutes plain error entitling Barthelus to a new trial.

### A. Procedural History

Barthelus commenced this case on August 13, 2012. (*See* Complaint [ECF No.

to which Barthelus had filed a Reply ... ("Reply") [ECF No. 232]. The parties in their briefing on the Renewed Motion purport to incorporate the arguments made in their briefing on the Motion. (*See* Renewed Mot. 1; Renewed Resp. 1 n.1). While the Court normally does not permit such incorporation, the Court makes an exception here for the sake of properly resolving the Renewed Motion as well as avoiding yet another round of briefing in a suit that has been ongoing since August 2012.

1] ). The Court granted final summary judgment in favor of G4S one year later, on August 13, 2013. (*See* Order [ECF No. 71] ). Barthelus appealed, and the grant of final summary judgment was affirmed in part and vacated in part, with the case remanded for further proceedings. *See Barthelus v. G4S Gov't Solutions, Inc.,* 752 F.3d 1309, 1317 (11th Cir.2014). An eight-day jury trial was held, beginning February 18, 2015, and ending March 2, 2015. (*See* [ECF Nos. 223–30] ). The jury returned a verdict in favor of G4S, and final judgment was entered on March 3, 2015. (*See* [ECF No. 219] ).

The operative complaint at the time of both summary judgment and trial was the First Amended Complaint [ECF No. 9]. Barthelus, a black Haitian man, claimed G4S, his former employer, discriminated against him in the workplace and terminated his employment based on his national origin, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), specifically 42 U.S.C. section 2000e–2(a)(1) ("Count I"); and based on his race, in violation of 42 U.S.C. section 1981 ("Count III"). (*See id.* ). Barthelus also claimed his employer terminated him in violation of Title VII, specifically 42 U.S.C. section 2000e–3(a), because he filed a complaint of discrimination with his employer's human resources department ("Count II"); and in violation of section 1981 ("Count IV"). (*See id.* ). While summary judgment was entered on all counts, the Eleventh Circuit vacated and remanded for further proceedings with respect to Counts I and III only. *See Barthelus,* 752 F.3d at 1317. At trial, although Counts I and III asserted both discrimination in the workplace and discriminatory termination, only the claims of discriminatory termination were submitted to the jury. (*See* Verdict [ECF No. 216] ).

**B. The Jury Instructions**

Barthelus requests a new trial on the basis of error in the Court's Instructions to the Jury ("Jury Instructions") [ECF No. 215]. With respect to the elements of Barthelus's claims, the Jury Instructions stated:

> To prevail on his race or national origin claim, Barthelus must prove each of the following facts by a preponderance of the evidence:
>
> First: That Barthelus was terminated by G4S Government Solutions; and
>
> Second: That Barthelus's race or national origin was a substantial or motivating factor that prompted G4S Government Solutions to take that action.

(*Id.* 2–3).

Accordingly, the verdict form first asked if the jury finds by a preponderance of the evidence:

> 1. That the Plaintiff's race was a substantial or motivating factor that prompted the Defendant to terminate him? . . . .
>
> 2. That the Plaintiff's national origin was a substantial or motivating factor that prompted the Defendant to terminate him?

(Verdict 1 (alteration added)). The verdict form further instructed the jury, if it answered "NO" to both of these questions, it "need not answer the remaining questions," but only "sign and date this verdict." (*Id.*). The jury answered "NO" to both questions. (*Id.*). Thus, the jury did not reach the third question: whether Barthelus "would have been discharged even in the absence of consideration of his race or national origin." (*Id.*).

The Jury Instructions provided guidance on the law to aid the jury in its deliberations. The first topic the instructions addressed is how to evaluate the reasons G4S proffered for why it terminated Barthelus:

You should be mindful that the law applicable to this case requires only that an employer not discriminate against an employee because of the employee's race or national origin. So far as you are concerned in this case, an employer may discipline an employee for any other reason, good or bad, fair or unfair, and you must not second guess that decision or permit any sympathy for the employee to lead you to substitute your own judgment for that of the G4S Government Solutions [sic] even though you personally may not favor the action taken and would have acted differently under the circumstances. Neither does the law require an employer to extend any special or favorable treatment to employees because of their race or national origin.

(Jury Instructions 3 (alteration added)).

The jury was also instructed it could find the reasons G4S gave were pretext (the "Pretext Instruction"):

To decide whether Barthelus's race or national origin was a motivating factor in G4S Government Solutions's decision, you may consider whether you believe the reasons G4S Government Solutions gave for the decision. If you do not believe the reasons given, you may consider whether the reasons are so unbelievable that they were a cover-up to hide the true discriminatory reasons for the decision.

(*Id.* 3–4).

If the jury found G4S's termination was motivated at least in part by discrimination, the jury was instructed on the "mixed motive" theory of liability (the "Mixed Motive Instruction"):

[I]t is not necessary for Barthelus to prove that his race or national origin was the sole or exclusive reason for G4S

Government Solutions's decision. It is sufficient if Barthelus proves that race or national origin was a determinative consideration that made a difference in G4S Government Solutions's decision.

(*Id.* 3 (alteration added)).

Additionally, the jury was instructed on a "cat's paw" theory of liability (the "Cat's Paw Instruction"):

Barthelus claims that G4S Government Solutions's decision to discharge him was based upon the recommendation of Deborah Bria, his manager at the time. If you find that Ms. Bria's recommendation was motivated by discrimination, and that G4S Government Solutions relied upon that recommendation without conducting an independent investigation and simply rubber stamped that recommendation, you may determine that Bria's recommendation was a motivating factor behind Barthelus's termination, even if you find that Bria did not make the final termination decision. But Barthelus's race and/or national origin can be a motivating factor in the decision only if you find that Barthelus has proved each of the following by a preponderance of evidence:

1. Bria acted with the intent to discriminate against Barthelus in recommending his termination;

2. Barthelus's race and/or national origin was a motivating factor behind Bria's recommendation; and

3. There was a direct relationship between Bria's recommendation and the termination decision.

(*Id.*).

Barthelus does not object to any of these instructions. The instruction he objects to concerns a "same actor" inference (the "Same Actor Instruction"):

In deciding whether Barthelus has proven that his race or national origin was a motivating factor in his termination, you are instructed that, where the same individual hired Barthelus and later terminated him, a strong inference or presumption exists that race and/or national origin was not a determining factor for G4S Government Solutions in deciding to terminate Barthelus.

(*Id.*). According to Barthelus, the Same Actor Instruction was improperly given because: (1) the evidence at trial did not support giving a "same actor" instruction at all; and (2) the Same Actor Instruction is an incorrect statement of the law. (*See generally* Renewed Mot.; Mot.).

## II. LEGAL STANDARD

■ A motion for a new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). Although a comprehensive list of the grounds for granting a new trial is elusive, the Supreme Court has held a motion for a new trial may rest on the fact that "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147 (1940). "Generally, motions for a new trial are committed to the discretion of the district court." *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984) (citation omitted).

■ A motion for a new trial may be based on an erroneous jury instruction, but the instruction must have been properly objected to: "A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection." FED. R. CIV. P. 51(c)(1). A party must also timely object to the instruction by objecting "before the instructions and [closing] arguments are delivered" to the jury. *Id.* 51(b)(2), (c)(2) (alteration added). Only if a party properly objects to a given instruction may the party later assign error to the instruction. *See id.* 51(d)(1)(A). Otherwise, the plain error rule applies: "A court may consider a plain error in the instructions that has not been preserved as required by Rule 51(d)(1) if the error affects substantial rights." *Id.* 51(d)(2).

■ Plain error review is an "extremely stringent form of review" that requires a moving party to establish: "(1) an error occurred; (2) the error was plain; (3) the error affected substantial rights; and (4) not correcting the error would seriously affect the fairness of the judicial proceeding." *Wilbur v. Corr. Servs. Corp.,* 393 F.3d 1192, 1203 n. 6 (11th Cir.2004) (citation omitted). "To meet this standard, the party must prove that the instruction was a misstatement of law that likely led to an incorrect verdict." *Parker v. Scrap Metal Processors, Inc.,* 386 F.3d 993, 1018 (11th Cir.2004). "The instruction must also mislead the jury or leave the jury to speculate as to an essential point of law." *Id.* (internal quotation marks and citations omitted).

■ Yet, even when a court does not apply the more stringent plain-error review, "new trials should not be granted on the basis of asserted errors which in the circumstances were not prejudicial." *An-*

*glo–Am. Gen. Agents v. Jackson Nat'l Life Ins. Co.,* 83 F.R.D. 41, 43 (N.D.Cal.1979) (citing Fed. R. Civ. P. 61); *see also First Act Inc. v. Brook Mays Music Co., Inc.,* 429 F.Supp.2d 429, 432 (D.Mass.2006) ("Even if the objecting party shows the Court misstated the law, a new trial can be granted only if the Court's error affected the outcome of the trial" (citations omitted)). This is so because, under Rule 61, "no error . . . is ground for granting a new trial . . . [unless that error] affect[s] any party's substantial rights." Fed. R. Civ. P. 61 (alterations added). As a result, "[e]rrors in instructions routinely are ignored if . . . the erroneous instruction went to an issue that is immaterial in the light of the jury's verdict, or if it otherwise is apparent that the error could not have changed the result." Charles Alan Wright et al., Federal Practice and Procedure § 2886 (3d ed.2015) (alterations added).

### III. ANALYSIS

The Court first addresses whether Barthelus properly raised the objections upon which he now relies in moving for a new trial, as the answer to that question determines the legal standard the Court will employ to adjudicate the Renewed Motion. The Court then resolves whether Barthelus's objections have any merit, *i.e.,* whether the Same Actor Instruction is erroneous. Finally, the Court assesses whether any error resulted in prejudice, for without prejudice, Barthelus is not entitled to a new trial.

### A. Objection to the Same Actor Instruction

■ Barthelus contends he properly objected to the Same Actor Instruction (*see* Renewed Mot. 5; Reply 2, 4), and even if

he did not, he still would be entitled to a new trial (*see* Renewed Reply 2). G4S responds Barthelus not only waived an objection to the Same Actor Instruction by failing to properly object, but he also expressly agreed to the instruction. (*See* Resp. 4–6, 9).

At the pretrial conference held on January 5, 2015, the parties discussed whether an instruction on the "same actor" inference should be included in the jury instructions. (*See* Jan. 5, 2015 Tr. [ECF No. 202] 60:22–62:13). Initially, Barthelus made clear he objected to including such an instruction, but he did not specify a ground for his objection. (*See id.* 39:4–8). Barthelus later restated his objection to a "same actor" instruction, this time explaining he objected on the ground there was no evidentiary basis for the instruction, as the evidence did not support a finding the supervisor in question, Paul Donahue, both hired and fired Barthelus: "Donohue [sic] did not hire Mr. Barthelus, the plaintiff, so he cannot be the same decision-maker." (*Id.* 61:7–9). G4S responded the evidence showed Donahue played a role in hiring and firing Barthelus. (*See id.* 61:10–12). The Court declined to rule on the issue at that time because, true to the factual nature of Barthelus's objection, the propriety of including a "same actor" instruction would depend on the evidence presented at trial. (*See id.* 61:13–62:12).

At the February 26, 2015 charge conference, held on the seventh day of trial, Barthelus again raised his objection to a "same actor" instruction on the ground there was no evidentiary basis for it. (*See* Trial Tr. Day 7 [ECF No. 229] 201:3–14). G4S responded Barthelus's testimony and Donahue's testimony provided an adequate basis (*see id.* 201:15–20), and further, the "same actor" instruction is "from the stan-

dard jury instruction" (*see id.* 201:20–21).[3] The parties then argued back and forth about whether there was sufficient evidence for the instruction, making it clear there remained a factual dispute. (*See id.* 201:22–203:18).

The Court then asked Barthelus's counsel to direct the Court to the page of the proposed instructions that contained the disputed "same actor" instruction (*see id.* 204:9–10), in response to which Barthelus's counsel acknowledged she had the instructions but then, instead of identifying for the Court the page the Court requested, stated: "And we would withdraw that objection, Your Honor." (*Id.* 204:11–12). The objection having been withdrawn, the Court then stated "Next," in response to which counsel for Barthelus proceeded to discuss the next issue, regarding the "mixed motive" instruction. (*Id.* 204:13–15). The record is thus clear Barthelus withdrew his objection to the "same actor" instruction at the February 26, 2015 charge conference.

At the end of the conference, the Court ordered the parties to submit memoranda of law on the issues the parties still disputed, and the Court and the parties would address those issues the following Monday—the jury would not be instructed to come in until the issues were resolved. (*See id.* 212:16–25). The parties obtained leave from the Court to confer for ten minutes, after which they advised they had

reached an agreement on the "cat's paw" instruction. (*See id.* 213:1–10). Counsel for G4S was unable to read the handwritten modifications to the instructions, so the Court allowed the parties to e-mail revised instructions and the revised verdict form to chambers the following day. (*See id.* 213:12–214:19). The Court inquired whether there were "[a]ny other issues with the jury instructions," and counsel for Barthelus stated there were no other issues. (*Id.* 214:20–24 (alteration added)).

After the conference, at around 5:00 p.m., counsel for G4S e-mailed jury instructions to the undersigned's courtroom deputy, who the next day confirmed with counsel for both parties the instructions were received. (*See* Resp., Ex. C [ECF No. 231–3]). On Sunday evening, however, counsel for Barthelus filed "Proposed Additional Jury Instructions" [ECF No. 210] and e-mailed "Additional Proposed Jury Instructions" to counsel for G4S (Resp., Ex. D [ECF No. 231–4]).

On Monday morning, at 9:41 a.m., counsel for G4S e-mailed the undersigned's courtroom deputy, attaching jury instructions and stating, "I believe that this resolves all of the issues on the jury instructions, unless plaintiff raises additional issues." (*Id.*). The attached instructions included a "same actor" instruction. (*See id.*). Sixteen minutes later, at 9:57 a.m., counsel for Barthelus filed "Proposed Amendments to Verdict

---

**3.** The "same actor" inference is not included as an instruction in the Eleventh Circuit Civil Pattern Jury Instructions, nor is it mentioned in the commentary. *See* Eleventh Circuit Civil Pattern Jury Instructions 4.5, 4.9 (2013). Counsel for G4S has not identified what jury instruction she was referring to, but the Court has identified a state court case in which a "same actor" jury instruction similar to the one used in this case was "taken verbatim"

from Todd J. McNamara and Alfred Southerland's Federal Employment Jury Instructions. *Brown Distrib. Co. of West Palm Beach v. Marcell*, 890 So.2d 1227, 1232 & n. 3 (Fla. 4th DCA 2005). As will be apparent in light of the discussion below, the Court disagrees with the reasoning supporting that court's finding of no error in the "same actor" jury instruction before it.

Form" [ECF No. 211], in which Barthelus, among other things, renewed the objection to the "same actor" instruction he had withdrawn a few days before. Critically, the objection was made on the ground there was no evidentiary basis for the instruction:

> Plaintiff anticipated that based on agreement of counsel that a special interrogatory would have been crafted to address the factual component of the "same actor" inference. Again, Plaintiff strongly opposes such an instruction based on the undisputed testimony on his dates of hire and lack of any evidence regarding a termination other than the one at issue in this case.

(*Id.* 4).

Seven minutes later, at 10:04 a.m., another charge conference began. (*See* Trial Tr. Day 8 [ECF No. 230]). During the conference, Barthelus requested the verdict form include special interrogatories with respect to the proposed "same actor" instruction. (*See id.* 12:3–13:16). Specifically, he requested interrogatories on whether the jury found by a preponderance of the evidence (1) Donahue hired Barthelus, and (2) Donahue fired Barthelus. (*See id.* 14:20–15:7). In the course of presenting argument on this issue, Barthelus reiterated his objection to the instruction being included at all, on the basis the evidence did not support the instruction (*see id.* 15:8–16), but Barthelus also stated, if the instruction was included, he wanted the special interrogatories with respect to the "same actor" issue (*see id.* 15:17–22). After hearing G4S's argument in opposition, the Court denied Barthelus's request for the special interrogatories. (*See id.* 15:24–16:22). Barthelus did not raise an argument against a "same actor" instruction again until after the trial, when he filed the Motion.

Close scrutiny of the flurry of pre-charge activity in this case makes clear Barthelus objected to the Same Actor Instruction, but he did so on the ground the evidence did not support giving any "same actor" instruction at all. Barthelus does indeed rely on this objection as a ground for a new trial. (*See* Mot. 6). Nevertheless, not once before the jury was charged did Barthelus object to any proposed "same actor" instruction on the other ground he asserts in the Renewed Motion: the wording of the instruction is inconsistent with the law. (*See* Renewed Mot. 2; Mot. 9–17). As Barthelus did not properly object to the Same Actor Instruction on this ground, a new trial based on this purported error is warranted only if plain error occurred. *See Pate v. Seaboard R.R., Inc.,* 819 F.2d 1074, 1082 (11th Cir. 1987).

## B. Error in the Jury Instructions

Review of jury instructions for error is a highly contextual analysis:

> The court examines the jury instructions as a whole to determine whether they fairly and adequately addressed the issue and correctly stated the law. Jury instructions must be put in context; we consider the allegations of the complaint, the evidence presented, and the arguments of counsel when determining whether the jury understood the issues or was misled.

*KMS Rest. Corp. v. Wendy's Int'l, Inc.,* 194 Fed.Appx. 591, 601 (11th Cir.2006) (citing *Christopher v. Cutter Labs.,* 53 F.3d 1184, 1190–91 (11th Cir.1995)).

Barthelus first argues the Same Actor Instruction should not have been given at all because the evidence at trial did not support it. (*See* Mot. 6). Accord-

ing to Barthelus, the evidence at trial showed Donahue (1) "lack[ed] involvement in the initial hiring," (2) "lack[ed] involvement" in the "performance evaluations and development of corrective plan," and (3) had a "limited role in the termination." (*Id.* (alterations added)). Barthelus argues he was instead hired by WSI "as a transferee." (*Id.*).

Barthelus's assertions are contradicted by the record. There clearly was evidence Donahue was involved in—indeed, responsible for—the hiring of Barthelus. (*See* Trial Tr. Day 2 at 85:4–87:3, 88:3–15). There also was sufficient evidence Donahue was involved in Barthelus's performance evaluations. (*See* Def. Ex. 9a [ECF No. 245–7]; Def. Ex. 9b [ECF No. 245–8]; Def. Ex. 9c [ECF No. 245–9]; Trial Tr. Day 2 at 88:16–116:6). Additionally, while Barthelus concedes Donahue had a limited role in his termination, adequate evidence shows Donohue's role was more than just "limited." (*See id.* 68:25–81:15).

Given the foregoing, there was certainly evidence Donahue was the "same actor" who hired and fired Barthelus. Of course, it is not outside the realm of possibility the jury ultimately agreed with Barthelus's contention Donahue was not the "same actor." (*See* Trial Tr. Day 4 [ECF No. 226] 27:15–28:4). The jury also could have believed Barthelus was not hired by WSI in the traditional sense but rather was transferred into the company. (*See id.*). Regardless, the evidence supported the giving of an instruction on the "same actor" inference.

 Next, Barthelus argues the wording of the Same Actor Instruction was not consistent with the law. (*See* Renewed Mot. 2; Mot. 9–17). Specifically, he assigns error to the instruction's use of the phrase "a strong inference or presumption exists." In *Williams v. Vitro Services Corp.*, 144 F.3d 1438 (11th Cir.1998), the Eleventh Circuit found a "same actor" circumstance "may give rise to a *permissible inference* that no discriminatory animus motivated [the employer]'s actions," but a *"presumption"* based on a "same actor" circumstance was inappropriate. *Id.* at 1443 (emphasis in original; citation omitted).

Although, as G4S notes, the court in *Williams* made its decision in the context of summary judgment and did not directly discuss jury instructions (*see* Resp. 7–8), the reasoning underlying the court's decision bears directly on how a jury may be instructed with respect to a "same actor" inference: "this inference is a permissible—not a mandatory—inference that a jury may make in deciding whether intentional discrimination motivated the employer's conduct." *Id.* (alteration added). Moreover, "it is the province of the jury rather than the court ... to determine whether the inference generated by 'same actor' evidence is strong enough to outweigh a plaintiff's evidence of pretext." *Id.* (alteration added). In other words, the jury decides whether to make the inference at all (even if it makes the predicate finding of fact) and what weight to give the inference.

As far as how this rule translates into jury instructions, the Court is not without further guidance. The Eleventh Circuit addressed a jury instruction regarding a permissible inference in the employment discrimination context in *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189 (11th Cir.2004), a case about wrongful termination based on disability discrimination. In that case, the court found a "pretext" instruction proper because the in-

struction stated "the jury *may* infer rather than *must* or *should* infer" discrimination based on "a disbelieved pretextual excuse." *Id.* at 1196 (emphasis in original; citation omitted).

Thus, while it was proper as a general matter to instruct the jury at Barthelus's trial on a "same actor" inference, the phrase "a strong inference or presumption exists" made the Same Actor Instruction erroneous because it told the jury, as long as it found the same individual hired and fired Barthelus, it was required not only to draw the inference G4S's termination of Barthelus was not motivated by discrimination, but also to give strong weight to that inference, *i.e.,* to treat it as a presumption. The Eleventh Circuit made clear in *Williams* it is entirely within the jury's discretion whether to make that inference at all and what weight to assign to the inference. G4S's proposed Same Actor Instruction therefore contravened binding precedent.

Barthelus does not stop there, however. He also asserts the Same Actor Instruction, if it had to be included, should have had a "limitation on time-frame between the hiring and firing," as had the instruction in *Proud v. Stone,* 945 F.2d 796, 797–98 (4th Cir.1991). (Mot.10). The Court is not persuaded by this argument. The time-period limitation in *Proud* arose from the fact the plaintiff alleged age discrimination—a cause of action as to which the lapse of time between hiring and firing is critical: the longer you work for a company, the older you get. This reasoning does not hold to the same degree in Barthelus's case, in which the alleged discrimination is based on the immutable characteristics of race and national origin. *See Buhrmaster v. Overnite Transp. Co.,* 61 F.3d 461, 464 (6th Cir.1995).

## C. Prejudice

The phrase "a strong inference or presumption exists" injected legal error into the Jury Instructions, but because Barthelus did not object to this language, he is entitled to a new trial only if he shows the erroneous instruction was plain error. Under this standard, a court must "review the trial in its entirety to determine the prejudicial effect of [the improper] instruction." *Christopher,* 53 F.3d at 1195 (alteration added; citation omitted).

The prejudice analysis under the plain-error standard requires an examination of the evidence in light of the verdict to determine whether the jury would have reached the same verdict without the error, but the analysis involves consideration of other factors as well. One of the most important of these factors is whether the instruction bore on or otherwise significantly affected a central or crucial issue in the case. In *Miller v. Universal City Studios, Inc.,* 650 F.2d 1365 (5th Cir.1981), the "short erroneous instruction, imbedded in a field of proper instructions" was at "the heart" of the plaintiff's case at trial—emphasized in opening argument, testimony, and closing argument—and therefore constituted plain error, despite the fact the record otherwise supported a verdict for the plaintiff. *Id.* at 1367, 1372. Similarly, in *Sheppard Federal Credit Union v. Palmer,* 408 F.2d 1369 (5th Cir.1969), the former Fifth Circuit found plain error because the evidence at trial was close and the erroneous instruction went to a crucial issue: the burden of proof. *See id.* at 1372; *see also Indus. Dev. Bd. of Town of Section, Ala. v. Fuqua Indus., Inc.,* 523 F.2d 1226, 1239 (5th Cir.1975) ("By setting up an additional hurdle to a favorable jury verdict for Van Heusen, the instruction on third-party beneficiary status may well

have deprived Van Heusen of its right to have the real issue, the issue of contract and damage, decided."); *Christopher,* 53 F.3d at 1194–95 (finding prejudice because a properly objected-to instruction, which the court found erroneous because it reflected an incorrect legal standard, instructed the jury on an issue at the heart of the defense's case, and the plaintiff's closing argument emphasized the incorrect legal standard).

■ Another factor is whether the record indicates the jury relied on the erroneous instruction. In *Industrial Development Board of Town of Section, Alabama,* the jury submitted a question about the erroneous instruction during its deliberations, demonstrating the jury was concerned with the issue underlying the instruction. *See* 523 F.2d at 1239–40. Relatedly, in *Hunt v. Liberty Lobby,* 720 F.2d 631 (11th Cir.1983), the court found plain error because the instructions allowed the jury to impose liability under two alternate standards (one of which was contrary to the law), and the court could not determine which standard the jury applied. *See id.* at 647. A third factor is whether the error in the instruction touches upon constitutional issues, *see id.* (noting the cause of action concerned the First Amendment's freedom of the press), and yet another factor is whether the error creates a substantial risk the jury ignored a significant portion of other evidence in the case, *see Pate,* 819 F.2d at 1083 (finding prejudice under plain error review because of a substantial risk an improper jury instruction led the jury to disregard most of the evidence in the case on the basis of a sole factual finding).

■ G4S makes a considerable showing the jury would have reached the same verdict even if the erroneous language in its Same Actor Instruction had been fixed. (*See generally* Renewed Resp.; Sur–Reply). Nevertheless, Barthelus was prejudiced by the error. First, the "same actor" inference was not merely a side issue at trial. G4S emphasized the inference during its opening statement and closing argument (*see* Trial Tr. Day 1 [ECF No. 223] 107:21–108:2, 109:8–110:25, 113:11–19, 126:9–22; Trial Tr. Day 8 at 47:6–18), and the issue of who hired and fired Barthelus was developed during Barthelus's and Donahue's testimony (*see* Trial Tr. Day 2 at 68:25–81:15, 85:4–87:3, 88:3–15; Trial Tr. Day 4 at 27:15–28:4). Additionally, the Same Actor Instruction received its own paragraph in the Jury Instructions and preceded both the Cat's Paw Instruction and the Pretext Instruction. (*See* Jury Instructions 3–4). The "same actor" inference might not have been the most important aspect of G4S's case—that was arguably Barthelus's poor performance record—but it was nevertheless emphasized.

In this vein, it is critical that, while G4S stressed Barthelus's continued failings in the workplace despite a decade's worth of second chances, the jury did not have to reach that issue, which is central to the third question of the verdict form: whether Barthelus "would have been discharged even in the absence of consideration of his race or national origin." (Verdict 1). The jury did not have to reach that issue because it answered the predicate questions in the negative, finding Barthelus's race and national origin were not substantial or motivating factors that prompted G4S to terminate him. (*See id.*). For these predicate questions, the central issue is discriminatory motive—the same issue the Same Actor Instruction addressed.

Here lies the heart of the problem: if the jury made the sole finding of fact

Donahue hired and fired Barthelus—which it likely did—it was required to draw the "strong inference or presumption" G4S's decision was not motivated by discrimination. Under *Williams,* the jury was entitled to reject such an inference entirely, even if it made the predicate "same actor" finding of fact. Yet, the jury was misled as to its power to do so. Without that "strong inference or presumption," there is a considerable possibility the jury would have found Barthelus's race or national origin was a "substantial or motivating factor" in his termination. (*See* Renewed Reply 3–4); *see also Barthelus,* 752 F.3d at 1315–16. The Same Actor Instruction's "strong inference or presumption," however, placed a heavy thumb on the scale and likely distorted the jury's finding regarding discriminatory motive by overpowering affirmative evidence of discrimination and overshadowing the Cat's Paw Instruction and the Pretext Instruction.

It is true, even if the jury found discrimination was a substantial or motivating factor, it still would have had to determine if G4S would have fired Barthelus anyway. (*See* Verdict 1). One could dig through the record and come to such a finding (*see generally* Renewed Resp.; Sur–Reply), but doing so in this procedural posture would amount to a "miscarriage of justice." *Hunt,* 720 F.2d at 647 (citations omitted). The issue of race and national origin discrimination—a serious constitutional and civil rights issue—lies at the core of Barthelus's claims, and he was entitled to have a jury decide that issue in accordance with the law. The Same Actor Instruction G4S injected into the case, representing it to be a "standard jury instruction," deprived him of that opportunity.[4]

4. Barthelus also challenges the admission of testimony by Serge Hairanian. (*See* Renewed Mot. 7). The Court declines to address the issue at this juncture, but Barthelus may raise it again before his new trial if, after conferral, the parties cannot reach an agreement.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Renewed Motion [ECF No. 242] is **GRANTED** as follows:

1. The Clerk is directed to **REOPEN** the case.

2. This cause is set for trial during the two-week trial period beginning **November 2, 2015.** A calendar call will be held on **Tuesday, October 27, 2015 at 9:00 a.m.,** and a pretrial conference and charge conference will immediately follow the calendar call. Trial will not be continued, and pre-trial motions are not permitted.

3. By **October 13, 2015,** the parties must submit joint proposed jury instructions.

**DONE AND ORDERED** in Miami, Florida, this 23rd day of September, 2015.