382 So.2d 789 (1980)
TRAVELODGE INTERNATIONAL, INC., a California Corporation, and Travelodge International, Inc., a California Corporation, D/B/a Balboa Supply, Appellants,
v.
EASTERN INNS, INC., a Florida Corporation, William Ackerman, Melvin Livingston, and Meyer Jaffee, Appellees.
No. LL-64.
District Court of Appeal of Florida, First District.
April 10, 1980.
Rehearing Denied May 8, 1980.
*790 Douglas H. Morford, B. Thomas Whitefield of Ulmer, Murchison, Ashby, & Ball, Jacksonville, for appellants.
Allen C.D. Scott, II of Maxwell & Scott, Jacksonville, for appellees.
LARRY G. SMITH, Judge.
Travelodge International, Inc., appeals from a final judgment entered after a jury trial in which the jury awarded damages of $25,575.00 to appellees, Eastern Inns, Inc., and the individual defendants, on their counterclaim. Travelodge relies for reversal primarily upon its contentions (1) that Section 817.416(2)(a)(1), Florida Statutes, providing for recovery of damages against a franchisor for intentionally misrepresenting the prospects or chances for success of a franchise, must be construed as requiring the same proof as is required for recovery in actions for common law fraud; and (2) that the absence of such evidence requires reversal of the judgment recovered by appellees. We disagree with appellant's contentions with respect to its construction of the statute, and we further find that the evidence was sufficient to be submitted to the jury for determination of appellees' counterclaim for recovery under the statute. Finding no error in these and other points raised by appellants, we affirm.
Travelodge, after considerable negotiation and discussion with Eastern, sold to Eastern a franchise under which Eastern received a license to operate a Travelodge Motel in Jacksonville. Upon nonpayment of fees and other charges claimed by Travelodge, Travelodge sued Eastern and the individual guarantors on the agreement. Eastern and the individual appellees counterclaimed, seeking recovery of a $15,000 franchise fee and other expenses, alleging false and fraudulent representations by Travelodge in the negotiations and discussions leading up to their purchase of the franchise. The trial judge directed a verdict on appellees' counterclaim so far as it sought recovery under the theory of common law fraud, but granted appellees' motion to amend their counterclaim by specifically referring to the statute, Section 817.416, Florida Statutes, as a basis for the cause of action. The trial judge was of the opinion, with which we agree, that the allegations of the counterclaim and the evidence presented were sufficient for an action under the statute, and amendment of the counterclaim was proper. Rule 1.190, Florida Rules of Civil Procedure. The jury returned a verdict denying appellant-Travelodge any recovery on its claims for breach of contract, and awarded damages as indicated above on appellees' counterclaim for intentional misrepresentation under the statute.
The statute, Section 817.416(2)(a)(1), provides in part:
(a) It is unlawful, when selling or establishing a franchise or distributorship, for any person:
1. Intentionally to misrepresent the prospects or chances for success of a proposed or existing franchise or distributorship; ... .
We are unable to agree with appellant's contention that the showing required for recovery of damages under the statute is the same as in an action for common law fraud. We would agree that, generally speaking, the word "intentionally" would require a showing that the misrepresentation in question was made knowingly and not innocently or negligently. We accept the interpretation of the word "misrepresent" as defined in Section 470(1), Restatement Contracts, as follows:
Any manifestation by words or other conduct by one person to another that, under *791 the circumstances, amounts to an assertion not in accordance with the facts.
The point of departure, we believe, in applying the ordinary rules of fraud and misrepresentation, is in the subject of the misrepresentation made actionable under the statute. Generally speaking, common law fraud requires proof of misrepresentation of a material past or presently existing fact. Stokes v. Victory Land Co., 99 Fla. 795, 128 So. 408 (1930); Harrington v. Rutherford, 38 Fla. 321, 21 So. 283 (1896). The statute, on the other hand, applies to misrepresentations concerning the "prospects or chances for success" of the proposed business enterprise, clearly referring to something that can only be expected to happen in the future. In actions for common law fraud, as appellants point out, a representation of a future intention is actionable only where the representation is false, that is, the representation of future intention is made at a time when no such intention exists. Homeseekers Realty Company v. Meanaer, 102 Fla. 7, 135 So. 402 (1931); Freland v. Orange Groves of Florida, 377 F. Supp. 690 (M.D.Fla. 1974); Bisset v. Ply-Gem Industries, Inc., 533 F.2d 142 (5th Cir.1976). Statements which are tantamount to an estimate of opinion are not actionable unless the party making the representations does so with an intent to prevent the party relying thereon from making an independent investigation of the facts. Upchurch v. Mizell, 50 Fla. 456, 40 So. 29 (1905); Stackpole v. Hancock, 40 Fla. 362, 24 So. 914 (1898). Compare Butts v. Dragstream, 349 So.2d 1205 (Fla. 1st DCA 1977). Further, appellants assert, statements of future expectations afford no basis for relief where the parties are dealing at arms length. Hart v. Marbury, 82 Fla. 317, 90 So. 173 (1921); Smith v. Hollingsworth, 85 Fla. 431, 96 So. 394 (1923); Bower v. Selecman, 52 So.2d 680 (Fla. 1951). Appellants also refer to the decision in Brod v. Jernigan, 188 So.2d 575 (Fla. 2nd DCA 1966), in which the court stated:
A promise that is merely unfulfilled is not necessarily a false promise. A promise to do something in the future, even if made as a representation to induce the other person to enter into a contract, does not amount to fraud in the legal sense, ...
We conclude that the statute in controversy here makes conduct actionable which is quite distinct from that to which the authorities furnished by appellants is applicable. The authorities cited by appellants illustrate the necessity, in actions for common law fraud, for proof of a deliberate and intentional false statement of material existing fact. The statute, on the other hand, by focusing upon misrepresentations as to the "prospects or chances for success", concerns itself with what is said today about what probably or most likely will happen tomorrow. If the total effect of appellants' conduct was to intentionally misrepresent what would be the probable or most likely prospects for success of the motel enterprise, based upon the facts and circumstances which were known by appellant, it may be liable for damages under this statute. We hold that recovery under the statute may be had upon proof of intentional words or conduct by the franchisor, concerning the prospects or chances of success of the enterprise, which were relied upon by the franchisee to his detriment, and which are not in accordance with the facts. We conclude that the trial judge did not commit error in failing to direct a verdict in favor of appellant and against appellees on their counterclaim.
We turn next to the contention that the evidence presented by appellees was insufficient to support their recovery of damages under the statute. The motel's lack of success, under the Travelodge license, was clearly demonstrated by appellees. A formal franchise application, along with an initial fee of $2,500.00, was submitted in early March, 1972. In January, 1973, Eastern paid Travelodge the remaining $12,500.00 of the $15,000.00 franchise fee, commenced construction, and opened its 150-room motel fully staffed for business in April, 1974. Daily occupancy was extremely poor, the average for the first eight months being 27.6%. Only one percent of *792 rentals during the period were from referrals. Toward the end of 1974, with the motel approaching bankruptcy, the management decided to convert to another system, and in January, 1975, Eastern gave notice to Travelodge that it was terminating the franchise. During the ensuing eleven months, operating under a different franchise, the daily occupancy average jumped to 63.9%.
It is undisputed that Travelodge, having experienced success in the operation of a system of west coast motels, made a decision to substantially expand its operations, particularly with respect to its facilities in the eastern United States. There was testimony which established that the expansion plan contemplated a system of "full facility" Travelodge motels  facilities with a minimum of 100 rooms, a restaurant, swimming pool, lounge, open twenty-four hours a day  up and down the eastern travel routes. The evidence would support the finding that the existence of such a system, capable of furnishing referrals to Eastern's new motel in Jacksonville, as other large motel chains did for their members, was the main ingredient of the franchise package contracted for by Eastern. The evidence would support the further finding that the "system", contemplated by Eastern as the primary consideration for the franchise fee, was virtually nonexistent at the time the final fee was paid (so far as the eastern United States was concerned), and did not subsequently materialize.
Appellant's argument that there was no evidence that Travelodge's statements as to its intentions were proven false misses the mark. The evidence was such that the jury could have found that Travelodge's brochures and the declarations of its agents presented the promised program of development and expansion of the "system" as if it had become reality. The license agreement itself commenced with the following confident pronouncement:
WHEREAS TRAVELODGE had developed and implemented a plan for providing, and has provided, a network of motor hotels and related services of high quality and of distinguishing characteristics (hereinafter referred to as the "System"), including (but not limited to) the following:
* * * * * *
It is no defense to the charge of intentional misrepresentation for Travelodge to insist that the foregoing statement was true, that Travelodge did in fact have a plan, and had provided a network of motels and a "system", as defined in the agreement. It had no such network and system that could make a Jacksonville, Florida motel a part of the "success story" so well documented in Travelodge's pre-franchise literature furnished to Eastern. The expansion plan actually never got "off the ground" so to speak, and the evidence at trial conclusively proved that the "plan" itself was thereafter abandoned. In fairness, it should be noted that Travelodge presented evidence tending to show that its failure to complete its planned program of expansion was caused by the 1973 OPEC oil embargo, and its attendant effects upon the motel industry, and upon economic conditions in general. Travelodge also points out that one of Eastern's corporate officials, Randall C. Dix, Sr., who personally conducted the franchise negotiations, was aware when the franchise application was submitted for approval that Travelodge's planned system of "full facility" motels in the eastern United States had not been completed. The evidence discloses also that Dix was highly knowledgeable and experienced in the motel industry, which would tend to support Travelodge's position that he could not have been misled by Travelodge's promotional efforts. We conclude, however, that these contentions presented jury issues, and upon examination of the entire record we find evidence sufficient to support the jury verdict in this case.
The trial judge's failure to give the jury instructions requested by appellant was not reversible error. Examination of these instructions reveals that they were addressed, for the most part, to appellant's defense of the common law fraud claim, as to which the trial judge had already ruled in appellant's *793 favor. We find no need to discuss appellant's point regarding the liquidated damages clause of the agreement, in view of the jury's verdict finding no breach of contract liability on the part of appellees.
We find no other issues requiring discussion other than the failure of the final judgment to reflect a set-off of $1,159.61, stipulated to by the parties. This sum reflects amounts owed by appellees to Balboa Supply and must be deducted from the amount of the judgment awarded to appellees.
The final judgment appealed is affirmed, with directions that the amount due be modified in accordance with the stipulation of the parties.
McCORD and ERVIN, JJ., concur.