# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____

JEAN FRANCOIS RIGOLLET,

Appellant,

v.

LE MACARON DEVELOPMENT, LLC; ROSALIE GUILLEM;
BERNARD GUILLEM; and DIDIER SABA,

Appellees.

No. 2D23-564
_____

March 27, 2024

Appeal from the Circuit Court for Sarasota County; Stephen Walker, Judge.

Jean François Rigollet, pro se.

Kimberly D. Thresher and Dennis D. Leone of Shankman Leone, P.A., Tampa, for Appellees.


LABRIT, Judge.

Jean François Rigollet appeals the dismissal of his counterclaim against Le Macaron Development, LLC (LMD).[1]  The trial court granted LMD's motion to dismiss after determining that Mr. Rigollet lacked standing and didn't sustain any damages.  But the trial court looked beyond Mr. Rigollet's counterclaim to make this determination, and the

_____

[1] Mr. Rigollet timely appealed the dismissal after all claims between LMD and Mr. Rigollet were finally resolved and all judicial labor in the case was at an end.  We have jurisdiction.  *See* Fla. R. App. P. 9.110(k).

counterclaim otherwise alleges sufficient ultimate facts to support Mr. Rigollet's causes of action. We therefore reverse the dismissal and remand for further proceedings.

## Background

LMD franchises pastry shops that specialize in macarons and other French pastries. In 2014, LMD entered into several franchise agreements with a similarly named but wholly unrelated entity, Le Macaron LLC (Franchisee). These agreements granted the Franchisee the rights to open and operate LMD's pastry shops, and they identified Mr. Rigollet as an "owner" of the Franchisee entity. In that capacity, Mr. Rigollet executed a personal guaranty for each franchise agreement through which he "guarantee[d] the prompt and full payment of all amounts owed by the Franchisee." Later, in 2015, LMD loaned the Franchisee $200,000 to complete construction of the pastry shops, in exchange for which the Franchisee executed a promissory note and Mr. Rigollet executed another personal guaranty.

Thereafter, the parties' business relationship soured. LMD filed a fifteen-count complaint against the Franchisee and Mr. Rigollet in 2017 alleging that they breached their obligations under the franchise agreements, the promissory note, and the personal guaranties. Four of LMD's fifteen counts were against Mr. Rigollet individually, including a count for breach of the promissory note and a count for breach of the franchise agreement guaranties. Mr. Rigollet answered the complaint, asserted affirmative defenses in response, and contemporaneously filed the counterclaim against LMD that is at issue in this appeal.

Mr. Rigollet's counterclaim pled five counts against LMD for (1) fraud in the inducement, (2) violation of the Florida Deceptive and Unfair Trade Practices Act, (3) violation of the Florida Franchise Act,

2

(4) breach of contract, and (5) breach of the implied covenant of good faith and fair dealing. In support, Mr. Rigollet alleged that LMD misrepresented several things associated with the pastry shop franchise, including its profitability, product quality, and the background and experience of its officers and head pastry chef. Mr. Rigollet also alleged that LMD's misrepresentations were part of a "scheme" that induced him and the Franchisee to enter into various agreements requiring "exorbitantly priced lease agreements" and "premium build out costs," caused the pastry shops to not be profitable, and ultimately allowed LMD to "take possession of the premium franchise locations" and reopen or resell them for profit without any of the incurred debt.

LMD later moved to dismiss Mr. Rigollet's counterclaim. It argued that Mr. Rigollet lacked standing to assert all five counts and that he did not incur any damages independent of the Franchisee. LMD partly based these arguments on Mr. Rigollet's deposition testimony and asked the trial court to consider his testimony on a motion to dismiss.

Following a hearing, the trial court granted LMD's motion. It reasoned that courts are "allowed to look outside the four corners of the complaint where a motion to dismiss challenges personal jurisdiction," and that "[t]he determination of standing is a jurisdictional issue." Based on this premise—and in part based on Mr. Rigollet's deposition testimony—the trial court found that Mr. Rigollet lacked standing to pursue all five counts in the counterclaim because "all damages alleged were in fact losses, expenses or damages of [the Franchisee]." The trial court also determined that Mr. Rigollet could not pursue any contract-based claims against LMD because he "was not a party to the contracts at issue," and that Mr. Rigollet could not sue under the Florida Franchise Act because "[o]nly the [Franchisee] has standing to pursue" such a

claim. The trial court denied Mr. Rigollet's request to amend the counterclaim, finding that "no amendment . . . would allow [Mr.] Rigollet to state a viable claim." The trial court thus dismissed Mr. Rigollet's counterclaim with prejudice.

Mr. Rigollet appeals the dismissal of his counterclaim and the denial of his request for leave to amend.[2] Because we agree with Mr. Rigollet that the trial court erred in dismissing his counterclaim, we need not reach the issue of amendment.

## Discussion

We review the trial court's decision to dismiss Mr. Rigollet's counterclaim de novo. *See Kidwell Grp. LLC v. Fla. Farm Bureau Cas. Ins.*, 348 So. 3d 1239, 1241 (Fla. 2d DCA 2022); *Nat'l Collegiate Student Loan Tr. 2006-4 v. Meyer*, 265 So. 3d 715, 718 (Fla. 2d DCA 2019). The trial court dismissed all five counts on grounds that "all damages alleged were in fact losses, expenses or damages of [the Franchisee]," so Mr. Rigollet lacked standing to pursue them. To so conclude, the trial court considered Mr. Rigollet's deposition testimony. This was error.

"In determining whether to dismiss a complaint for lack of standing, [the court] must confine [its] review to the four corners of the complaint, draw all inferences in favor of the pleader, and accept all well-pled allegations in the complaint as true." *Meyer*, 265 So. 3d at 718 (alterations in original). Likewise, because standing is an affirmative defense, only where "the face of the complaint contains allegations which

---

[2] Mr. Rigollet also attempted to appeal the dismissal of a third-party complaint he filed against LMD's principals Rosalie and Bernard Guillem and its head pastry chef Didier Saba. We lack jurisdiction to review that dismissal, however, because Mr. Rigollet did not appeal it within thirty days. *See* Fla. R. App. P. 9.110(k) ("If a partial final judgment totally disposes of an entire case as to any party, it must be appealed within 30 days of rendition.").

4

demonstrate the existence of" a lack of standing may the trial court dismiss it on those grounds. *Id.* And dismissals with prejudice based on a lack of standing are generally improper. *Id.*

The allegations in Mr. Rigollet's counterclaim, when accepted as true and viewed in his favor, allege that Mr. Rigollet sustained damages sufficient to establish standing at this stage. Despite these allegations, the trial court considered standing a "jurisdictional issue" that it could venture beyond the pleadings to resolve.[3] But "[o]rdinarily, Florida courts do not construe a plaintiff's lack of standing as if it were a jurisdictional defect." *Corrigan v. Bank of Am., N.A.*, 189 So. 3d 187, 192 n.2 (Fla. 2d DCA 2016) (Lucas, J., concurring). Standing relates to a litigant having "a sufficient stake in an otherwise justiciable controversy" that enables the litigant to "obtain judicial resolution of that controversy." *Tampa Port Auth. v. Henriquez*, 377 So. 3d 187, 193 (Fla. 2d DCA 2023) (quoting *C.H. v. Adoption of N.K.*, 322 So. 3d 177, 180 (Fla. 2d DCA 2021)). Subject matter jurisdiction, on the other hand, relates to a "court's constitutional or statutory authority to decide a class of cases." *Id.* (quoting *Kozel v. Kozel*, 302 So. 3d 939, 945 (Fla. 2d DCA 2019)). What's more, "[a] party's lack of standing . . . does not affect the court's subject matter jurisdiction." *Id.*; *see also Page v. Deutsche Bank Tr. Co.*

---

[3] The trial court relied on *Rogers & Ford Construction Corp. v. Carlandia Corp.*, 626 So. 2d 1350 (Fla. 1993), but its reliance is misplaced. There, our supreme court explained that "[t]he determination of standing to sue concerns a court's exercise of jurisdiction to hear and decide the cause pled by a particular party." *Id.* at 1352. It did so in the context of holding that "the Legislature may not constitutionally determine whether a party has standing" because only "courts determine standing." *Id.* (citing *Avila S. Condo. Ass'n v. Kappa Corp.*, 347 So. 2d 599, 608 (Fla. 1977)). Thus, standing is not a jurisdictional issue under *Rogers & Ford*; it's an issue exclusively within the courts' jurisdiction to determine—just generally not on a motion to dismiss.

5

*Ams.*, 308 So. 3d 953, 960–61 (Fla. 2020) (explaining that "standing is obviously not 'a component of subject-matter jurisdiction' " because subject matter jurisdiction is never waivable while "the issue of standing is a waivable defense").

Thus, Mr. Rigollet's alleged lack of standing due to his alleged lack of damages was not a jurisdictional concern.[4] It was an affirmative defense that—like most affirmative defenses—could not be determined on a motion to dismiss unless the facts supporting it appeared on the face of Mr. Rigollet's pleading. They didn't, so the trial court erred reversibly by granting LMD's motion to dismiss based on a lack of standing. *See Kidwell Grp. LLC*, 348 So. 3d at 1241; *Meyer*, 265 So. 3d at 718–19; *Landmark Funding, Inc. ex rel. Naples Syndications, LLC v. Chaluts*, 213 So. 3d 1078, 1079 (Fla. 2d DCA 2017).

Our analysis does not end there, however, because the trial court found alternative reasons to dismiss several counts of Mr. Rigollet's counterclaim. It dismissed Mr. Rigollet's contract-based counts for fraud in the inducement, breach of contract, and breach of the implied

_____

[4] We also note that the trial court's determination that Mr. Rigollet lacked damages was more akin to a failure of proof than a lack of standing. While standing has an "injury in fact" component, *see State v. J.P.*, 907 So. 2d 1101, 1113 n.4 (Fla. 2004), the trial court found that Mr. Rigollet did not sustain the damages "required for all [c]ounts in the [c]ounterclaim." In other words, the trial court believed that Mr. Rigollet couldn't prove at least one element of his claims. But "[a] motion to dismiss is not a substitute for a motion for summary judgment," and a trial court lacks authority "to look beyond the complaint to consider the sufficiency of the evidence." *Migliazzo v. Wells Fargo Bank, N.A.*, 290 So. 3d 577, 578–79 (Fla. 2d DCA 2020) (first quoting *Baycon Indus., Inc. v. Shea*, 714 So. 2d 1094, 1095 (Fla. 2d DCA 1998); and then quoting *Al-Hakim v. Holder*, 787 So. 2d 939, 941–42 (Fla. 2d DCA 2001)). We have not considered and do not comment on whether the evidence would be sufficient to withstand a motion for summary judgment, but it was not something the trial court could consider on a motion to dismiss.

warranty of good faith and fair dealing on grounds that Mr. Rigollet was not a party to the contracts upon which he sued. We have thoroughly reviewed Mr. Rigollet's pleading and its attachments, and we conclude that he sufficiently alleged that he was a party to the contracts identified in the counterclaim, namely the promissory note and the franchise agreement guaranties. Indeed, although we confine our review to Mr. Rigollet's counterclaim, we note that LMD sued Mr. Rigollet for breach of the very same contracts. Based on the allegations in Mr. Rigollet's counterclaim, the trial court erred in dismissing Mr. Rigollet's contract-based counts on grounds that he was not a contracting party.

As to Mr. Rigollet's claim under the Florida Franchise Act, the trial court determined that only the Franchisee could maintain such a claim. It based this ruling on our decision in *Checkers Drive-In Restaurants, Inc. v. Tampa Checkmate Food Services, Inc.*, 805 So. 2d 941 (Fla. 2d DCA 2001). We agree that *Checkers* is the proper authority, and that only the "person" who "invested" in the franchise has standing to sue under the Florida Franchise Act. *Id.* at 944. The problem here is that it's not clear from Mr. Rigollet's counterclaim which party invested in the franchise— the Franchisee, Mr. Rigollet, or both. The trial court could only consider Mr. Rigollet's allegations, and it had to draw all inferences in his favor. *See Meyer*, 265 So. 3d at 718. His allegations do not clearly indicate a lack of standing to sue under the Florida Franchise Act so the trial court should not have dismissed this count of his counterclaim. *Cf. Travelodge Int'l, Inc. v. E. Inns, Inc.*, 382 So. 2d 789, 790 (Fla. 1st DCA 1980) (affirming final judgment for franchisee and its individual guarantors under the Florida Franchise Act and agreeing that the allegations in their counterclaim against franchisor "were sufficient for an action under the statute"); *Hetrick v. Ideal Image Dev. Corp.*, 372 F. App'x 985, 989 (11th

Cir. 2010) (recognizing that those who invest in a franchise "individually and on their own behalf" have standing to file a claim under the Florida Franchise Act).

At bottom, Mr. Rigollet's counterclaim alleged sufficient ultimate facts to support all five counts. We reverse the order of dismissal with prejudice and remand to the trial court for further proceedings.

Reversed and remanded.

KELLY and MORRIS, JJ., Concur.

_____

Opinion subject to revision prior to official publication.